EXCHANGE BANK & TRUST COMPANY, Appellant,

v.

LONE STAR LIFE INSURANCE COMPANY, et al., Appellees.

No. 19107.

Court of Civil Appeals of Texas, Dallas.

Feb. 16, 1977.

H. Robert Powell, Luce, Hennessy, Smith & Castle, Dallas, for appellant.

William D. Sims, Jr., Jenkens & Gilchrist, Dallas, for appellees.

GUITTARD, Chief Justice.

This suit was brought by Exchange Bank & Trust Company against Lone Star Life Insurance Company to enforce a loan commitment made by Lone Star to Five Forty Three Land, Inc., a corporation engaged in land development. Exchange Bank had made a short-term loan to the borrower corporation, and it now seeks as a third-party beneficiary of the loan commitment to require Lone Star to purchase the borrower's note given for the short-term loan. The trial court rendered summary judgment denying recovery, and Exchange Bank appeals. We affirm on the ground that the bank was, at most, an incidental beneficiary rather than a third-party creditor beneficiary. We hold also that a later acknowledgment to the bank of Lone Star's commitment to the borrower did not constitute an independent contract between Lone Star and the bank, and that there was no ambiguity in the commitment letter raising a fact issue for decision by a jury with the aid of extrinsic evidence.

The bank cites no reported decision in which a short-term lender has been held to

be a third-party creditor beneficiary of a long-term loan commitment. It acknowledges that the contrary was held by this court in *Republic National Bank v. National Bankers Life Insurance Co.*, 427 S.W.2d 76 (Tex.Civ.App.-Dallas 1968, writ ref'd n. r. e.), and also in *Briercroft Savings & Loan Ass'n v. Foster Financial Corp.*, 533 S.W.2d 898 (Tex.Civ.App.-Eastland 1976, writ ref'd n. r. e.), but it undertakes to distinguish these cases on the basis of the peculiar language of the commitment in question.

■ In the *Republic* case, this court applied to a similar fact situation the rule that a contract to provide a borrower with funds to pay his debts does not give his creditors a right to enforce the contract as third-party beneficiaries. A similar holding was made in *Briercroft*. Exchange Bank asserts that this case is different because the provisions of the loan commitment now in question, when considered in the light of the circumstances, obligates Lone Star to purchase the short-term note, and, consequently, gives Exchange Bank the right to enforce the commitment as a third-party beneficiary. Accordingly, we shall examine the circumstances, as established by the summary-judgment proof, and then consider the material provisions of the commitment letter, in order to determine whether a different rule should be applied in this case.

The commitment in question was issued by Lone Star on March 19, 1975. It was the last in a series of commitment letters, beginning in 1972, and renewed from time to time. After obtaining the original commitment, the corporate borrower obtained a short-term loan from Texas Bank & Trust Company. On February 1, 1974, Exchange Bank agreed to loan the corporate borrower $250,000 secured by its deed of trust on land in Collin County and by the personal guaranties of its officers, James C. Hadsell and Charles Belew. The bank calls our attention to an affidavit by one of its officers that this loan was made in reliance upon Lone Star's commitment, although it does not refer us to any contractual document so providing. On February 8, 1974, Lone Star renewed its commitment to the borrower, and in August 1974, at the borrower's request, increased its commitment to $350,-000. At about the same time Exchange Bank increased its loan to the same amount. This increased loan was renewed, as evidenced by a new note payable to the bank dated February 10, 1975, and on March 19, 1975, the commitment letter in question was signed by Lone Star and the borrower. We quote this letter with the deletions and emphasis in the bank's brief:

Five Forty Three Land, Inc.
2915 LBJ, Suite 101
Dallas, Texas 75234

Attention: Mr. James C. Hadsell

Gentlemen:

> Re: Application for $350,000 First Mortgage Loan on a 255.064 acre Country Estate Development, Collin County, Texas.

We are pleased to inform you that Lone Star Life Insurance Company ("Lender") has approved your application for a $350,000 First Mortgage Loan. Loan is to be made to Five Forty Three Land, Inc. ("Borrower") and is secured by a first mortgage lien on the above-referenced property. . . .

Funding of the loan by Lender is subject to the following terms and conditions:

1. The amount of the loan is . . . for . . . five years . . . at 15% per annum. Amortization . . . and . . . payment of interest . . . as follows:
   a. Twenty-four (24) consecutive monthly payments . . .
   b. The loan may be prepaid . . ..

2. The loan is to be secured by a first mortgage lien . . . ..

3. The personal *guaranties* of James C. Hadsell and Charles E. Belew *held by Exchange Bank & Trust Company* covering the existing $350,000 first mortgage loan (the "Bank Loan") on the Property *will be assigned to Lender.*

4. Borrower will provide to Lender, at date of closing, a Mortgage's [sic] Title Policy on form and from company acceptable to lender . . . naming Lender as insured and guaranteeing that the Loan is secured by a valid first lien against the Property and containing only those restrictions, easements or reservations shown in the Mortgagee's Title Policy issued by Southwest Title Insurance Co. to *Exchange Bank & Trust Company* with respect to the Property and the above-captioned Loan and such other restrictions, easements or reservations as Lender may approve, such approval not to be unreasonably withheld.

5. All documents required at closing by Lender must be acceptable to Lender's counsel; provided, however, *Lender agrees* that the terms and provisions of the *Deed of Trust and personal guaranties* executed by Borrower, James C. Hadsell and Charles E. Belew, as the case may be, *in connection with the Bank Loan* are acceptable to Lender.

6. All costs of closing, . . . by Borrower.

7. Lender will not be obligated to fund the loan prior to August 11, 1975, nor later than October 10, 1975.

8. Written *notice* will be given Lender by *either* Borrower *or Exchange Bank & Trust Company* at least sixty (60) days prior to the date when Lender will be called upon by Borrower to fund the Loan.

9. This commitment by Lender is non-assignable.

If this Commitment Letter . . . agreeable to you, please so indicate by executing the copy of . . .. This Commitment Letter will be null . . . if not executed and returned prior to March 29, 1975.

David A. Keener, Chairman
Lone Star Life Insurance Company

On May 16, 1975, the bank's officer wrote the following letter to Lone Star:

Mr. D. A. Keener
Lone Star Life Insurance Company
200 Treadway Plaza
Dallas, Texas 75235

Re: Commitment Letter dated March 19, 1975
FIVE FORTY THREE LAND, INC.

Dear Mr. Keener:

This is to put you on notice that Exchange Bank & Trust Company expects Lone Star Life Insurance Company to purchase the above reference note not prior to August 11, 1975, nor later than October 10, 1975. This will comply with the request that we notify you in writing sixty (60) days prior to the take out date.

Please acknowledge receipt of this notice by signing a copy of this letter.

Thank you for your cooperation.

Sincerely,
N. L. Lester
Executive Vice President

On June 2, 1975, an officer of Lone Star added a notation to the letter, signed it, and returned the letter with its notation to the bank. This notation, which the bank now asserts to be an independent promise to purchase its note, is as follows:

We acknowledge receipt of this notice and agree to comply with the terms and conditions as set out in the commitment letter referenced above.

There is no evidence that the borrower ever "called on" Lone Star to fund the loan. On September 15, the borrower requested a two-year extension of the commitment. On October 7, Exchange Bank made written demand on Lone Star to purchase its note. On October 10, the last day before the commitment expired by its own terms, Lone Star and the borrower orally agreed to a one-year extension, and Lone Star wrote a letter to that effect to the borrower, but the letter provided that the extension would be "null, void, and of no further force and effect if not executed and re-

turned prior to October 17, 1975." This letter was never signed or returned by the borrower. On November 13, 1975, Lone Star notified the borrower that the commitment had expired and that Lone Star would not make the loan because of the insolvency of the borrower and of Hadsell, one of the guarantors of the bank's note. Later, the borrower's corporate charter was revoked, and Hadsell filed a bankruptcy proceeding. Lone Star declined to purchase the bank's note, and this suit followed.

■ In attacking the summary judgment rendered by the trial court, Exchange Bank relies on several differences between the language of the present commitment letter and that in the *Republic* and *Briercroft* cases, *supra*. It points out that in each of those cases the commitment letter did not name the short-term lender, and, therefore, it says that the letter was properly construed merely as a promise to the borrower to provide funds which the borrower at its discretion could use to pay off the short-term loan; whereas, here, it argues, Lone Star's commitment letter expressly refers to the Exchange Bank loan and, in effect, requires an assignment of that loan and its security to Lone Star. Thus, the bank insists that the letter expressly provides that the personal guaranties of Hadsell and Be-lew held by Exchange Bank should be assigned to Lone Star, that the deed of trust and guaranty agreements executed in connection with the bank's loan were acceptable to Lone Star, that the title insurance policy to be furnished by the borrower should contain only the exceptions in the policy previously issued to the bank in connection with this loan, and that notice that Lone Star would be called on by the borrower to fund the loan would be given either by the borrower or by Exchange Bank. The bank argues that the provision for assignment of the guaranties shows an intention that the bank's note itself should be assigned, and consequently, that the commitment obligated Lone Star to pay the proceeds of the loan directly to the bank (or to a title company for transmission to the

bank), rather than to the borrower. It also urges the provision allowing notice to be given by the bank as evidence of an intention to make the bank a third-party creditor beneficiary.

These references to Exchange Bank and its note do not, in our opinion, distinguish the present case materially from *Republic* and *Briercroft*. As the extrinsic summary-judgment proof in this case shows, banks making short-term loans on real estate customarily rely on long-term loan commitments as sources of funds to the borrowers for repayment of the short-term indebtedness, whether or not the short-term lender is named in the long-term commitment, and customarily the proceeds of the long-term loan are transmitted through a title company to the short-term lender. We do not see how naming the short-term lender in this commitment letter materially changes the substance of the transaction. The commitment in question obligates Lone Star to make a loan to the corporate borrower and to disburse the proceeds for the borrower's benefit. Therefore, as in *Republic* and *Briercroft*, consummation of the long-term loan depends on the decision of the borrower, and any benefit to the short-term lender is incidental.

■ The right of a short-term lender to enforce such a commitment when the borrower is unable or unwilling to consummate it should not rest on implication. In this sense, we reaffirm our statement in *Republic* that the parties to a contract are presumed to contract for themselves, and that when a third party asserts rights under it, the intent that it should inure for his benefit must be "clearly apparent," and any doubt should be resolved against such intent. 427 S.W.2d at 79–80.

Lack of intent to provide for Exchange Bank any independent right to enforce the commitment letter is shown by the circumstance that permitting enforcement by the bank as a third-party beneficiary would have the effect of altering the terms of the loan which Lone Star committed itself to make. The bank contends that the letter is,

in effect, a "take-out commitment," which obligates Lone Star to purchase the bank's note, regardless of whether the borrower is willing or able to consummate the loan. It argues that if the borrower fails to execute a new note and deed of trust on the terms provided, Lone Star's remedy is to assert the rights of an assignee of the bank's note, that is, to foreclose the bank's deed of trust, sue the borrower on the bank's note, and enforce the liability of the bank's guarantors. We do not believe that the commitment letter can fairly be interpreted as obligating Lone Star to place itself in the bank's position. The letter does not by its terms provide that Lone Star should purchase the note, and only by implication does it contemplate an assignment of the note to Lone Star. The letter provides rather for a loan to the corporate borrower on terms different from those provided in the bank's note. The commitment is for a loan for a period of five years, with interest at 15% per annum, both principal and interest payable in monthly installments. Presumably the prospect of receiving the interest, as well as repayment of the principal, was a substantial inducement for the commitment. The contemplated assignment of the bank's note, with its guaranties, was in the nature of additional security for the new note to be signed by the borrower. If Lone Star's commitment were simply to purchase the bank's loan, simpler and less equivocal language could easily have been employed, and a direct promise by Lone Star to pay the money to the bank would have been more appropriate. Consequently, we conclude that the bank is not a third-party creditor beneficiary with an independent right to require Lone Star to purchase its loan.

This conclusion is not affected by the provision in the letter for notice to be given by either the borrower or the bank. The notice is required "at least sixty (60) days prior to the date when Lender will be called on by Borrower to fund the Loan." This provision contemplates that the borrower rather than the bank would "call on" the lender to fund the loan, even though the notice may be given by the bank. Significantly, it does not provide that the bank may call on the lender to advance the funds even when the borrower does not call on it to do so. This provision means only that a notice by the bank is equivalent to a notice by the borrower. It does not purport to grant to the bank any additional right, and, in our opinion, should not be interpreted to do so.

In the alternative, Exchange Bank contends that if it is not a third-party beneficiary as a matter of law, the commitment letter is ambiguous in that respect, and, consequently, that there is a fact issue which precludes the summary judgment rendered by the trial court. We do not agree that the letter is ambiguous. The bank does not point out any particular language which it asserts to be susceptible of more than one meaning. Each provision is clear enough in itself. The uncertainty, if any, does not relate to the meaning of the language, but rather to the legal effect of the letter as a whole. The question, therefore, is one of legal construction rather than interpretation. *See Don Drum Real Estate Co. v. Hudson*, 465 S.W.2d 409, 413 (Tex.Civ.App.-Dallas 1971, no writ); 3 A. Corbin, *Contracts*, § 534 (1960). Such a question of legal construction is a question of law for the court rather than a question of fact for the jury. *See Tower Contracting Co. v. Flores*, 157 Tex. 297, 302 S.W.2d 396, 399 (1957). Consequently, the trial judge was authorized to construe the commitment letter on motion for summary judgment, and, for the reasons already stated, we find his construction to be correct.

Exchange Bank further contends that Lone Star made an enforceable independent promise directly to the bank to purchase its loan. As we have already noted in our recitation of the facts, on May 16, 1975, the bank mailed a letter to Lone Star calling on Lone Star to purchase its note. On June 2, 1975, Lone Star's president responded by returning the letter to the bank

**954**

with the following notation: "We acknowledge receipt of this notice and agree to comply with the terms and conditions as set out in the commitment letter referenced above."

The bank argues that this acknowledgment is a direct promise to it by Lone Star, but does not assert that it constituted a new contract based on a new consideration or that the bank changed its position in reliance on it. We hold that it does not have the elements of a new contract, and, therefore, it cannot be enforced by the bank. Although the notice states that the bank expects Lone Star to purchase the note, the acknowledgment avoids acquiescence in this demand. It merely states Lone Star's intention to comply with the commitment on which Lone Star was already bound. This means nothing more than that Lone Star would comply if the borrower would also comply. Consequently, it cannot fairly be interpreted as an independent contract obligating Lone Star to purchase the bank's note, regardless of whether the borrower is able and willing to accept the loan.

In view of our holding that as a matter of law Exchange Bank is not a third-party creditor beneficiary with the right to enforce the commitment in question, and that Lone Star's acknowledgment of June 2, 1975, did not constitute a new contract directly with the bank, the bank's contentions with respect to satisfaction and waiver of conditions precedent to Lone Star's obligation under its commitment become immaterial. Accordingly, all of the bank's points of error are overruled.

Affirmed.

ROBERTSON, J., not participating.