**TEXAS BANK & TRUST COMPANY of Texas, Appellant,**

v.

**LONE STAR LIFE INSURANCE COMPANY, Appellee.**

**No. 1115.**

Court of Civil Appeals of Texas, Tyler.

April 13, 1978.

Stephen A. Brutsche, Geary, Stahl, Koons, Rohde & Spencer, Dallas, for appellant.

William D. Sims, Jr., Jenkens & Gilchrist, Dallas, for appellee.

McKAY, Justice.

This is an appeal from a summary judgment that appellant, Texas Bank & Trust Company, take nothing against appellee, Lone Star Life Insurance Company, for the latter's failure to honor its loan commitment to James C. Hadsell d/b/a Signa Properties.

Appellant alleged that as a result of Lone Star's failure to honor the loan commitment, it was damaged in the amount of $251,250, the sum of $225,000 being the difference between the amount of the commitment by Lone Star and the bid price at the foreclosure sale of the real property which secured its interim loan, and $26,250 representing trustee's fees incurred by Texas Bank in relation to the foreclosure of the real property. Appellant further alleged Lone Star waived any nontransferability provision of the commitment and 60-day notice requirement by its conduct.

Lone Star answered and, at the completion of all discovery, filed a motion for summary judgment asserting that (1) Texas Bank, as opposed to Hadsell, had no cause of action against Lone Star because there was no privity of contract between Lone Star and Texas Bank, (2) conditions precedent to Lone Star's obligation, if any, to Hadsell had not been met, and (3) Hadsell was insolvent at the time for funding the loan commitment.

The trial court granted Lone Star's motion for summary judgment that appellant take nothing against appellee. From this judgment appellant perfects its appeal.

We affirm.

James C. Hadsell testified by deposition that he contacted Texas Bank and Trust in order to obtain interim financing for the purchase of an 11.559 acre tract of land in Euless, Texas. Before making the interim loan, Texas Bank required Hadsell to obtain a commitment for long-term financing. After discussions between all parties concerned, Lone Star Life issued a commit-

ment letter to James Hadsell. The letter, dated September 14, 1972, committed Lone Star Life to lend Hadsell $750,000 between September 1, 1975, and December 31, 1975, and was signed by J. Bryan Sutherlin. We quote this letter as it appears in the record:

"September 14, 1972

Signa Properties
3001 LBJ Freeway
Suite 101
Dallas, Texas 75234

Attention: Mr. James C. Hadsell

Gentlemen:

Re: Application for $750,000 First Mortgage Loan, 11.559 Acre Tract, Euless, Texas.

We are pleased to inform you that Lone Star Life Insurance Company ('Lender') has approved your application for $750,000 First Mortgage Loan. Loan is to be made to James C. Hadsell ('Borrower') and is to be secured by a First Mortgage Lien on the above referenced property and more exactly described in Exhibit A attached hereto.

Funding of the loan by Lender is subject to the following terms and conditions:

(1) The amount of the loan is to be $750,-000 for a term of five (5) years at an interest rate of 9¾% per annum. Amortization of the loan and the payment of interest thereon shall be as follows:

(a) Sixty (60) consecutive monthly payments of approximately $15,843.23 with such payments commencing one (1) month after date of closing.

(2) The loan is to be secured by First Mortgage Lien on the property described in exhibit A.

(3) Payment of the loan is to be guaranteed personally by James C. Hadsell.

(4) Borrower will provide to Lender at the date of closing a Mortgagee's Title Policy on form and from company acceptance to Lender in the amount of the loan, showing the fee simple title vested in the named Borrower, naming Lender as insured and guaranteeing that the loan is secured by a valid first lien against the property and any restrictions, easements or reservation must be approved by Lender. As a prerequisite for funding this loan the subject property must be at the time of funding zoned commercial.

(5) All documents required at closing by Lender must be acceptable to Lender's counsel.

(6) All costs of closing, including the cost of Title Policy, surveys, etc., will be borne by Borrower.

(7) Lender will not be obligated to fund the loan prior to September 1, 1975 nor later than December 31, 1975.

(8) Written notice will be given Lender Sixty (60) days prior to the date when Lender will be called upon by Borrower to fund the loan.

(9) This commitment by Lender is non-transferable and will not be binding until the agreed upon commitment and administrative fees are paid to Lender. The agreed upon commitment and administrative fees are $15,000.00 payable, upon acceptance of this Commitment Letter by you, at the home office of the Lender. The agreed upon commitment and administrative fees once paid are non-refundable whether or not the loan is funded by Lender.

If this Commitment Letter embodies terms and conditions agreeable to you, please so indicate by executing the copy of this Commitment Letter provided herewith and returning it to Lone Star Life Insurance Company along with the payment of the $15,000.00 commitment and administrative fee. This Commitment Letter will be null, void and of no further force and effect if not executed and returned prior to October 1, 1972.

For the Investment Committee,
s/J. Bryan Sutherlin
J. Bryan Sutherlin

Agreed and Accepted:

s/James C. Hadsell
James C. Hadsell"

On September 20, 1972, Hadsell executed and delivered to Texas Bank a promissory note in the amount of $750,000.00 with interest at 7% per annum, secured by a first

lien on the Euless Tract. This note was due on or before September 20, 1973. After further discussion between the parties, J. Bryan Sutherlin of Lone Star wrote Texas Bank and Trust Company concerning the transferability of the commitment letter. The letter is quoted as it appears in the record:

"September 20, 1972

Texas Bank and Trust Company
One Main Place
Dallas, Texas 75250

Gentlemen:

Lone Star Life Insurance Company from time to time issues mortgage loan commitment letters to various companies or individuals. Recently Lone Star Life has issued such loan commitment letter to James C. Hadsell. Our standard commitment letter states 'this commitment by lender is non-transferable . . ..'. The intent of the non-transferability is that James C. Hadsell cannot assign the commitment letter to another individual or entity and is not intended to prevent Mr. Hadsell from banking the commitment letter. Stated differently, monies advanced to Mr. Hadsell secured by a first mortgage lien on the subject property to which he has title is in no way intended to be excluded within the intent of the non-transferability clause.

Therefore, Lone Star Life stands ready to enter into a note repurchase agreement with Texas Bank and Trust with terms and conditions of such note repurchase agreement following generally the provisions of the commitment letter or letters issued to Mr. Hadsell.

Kindest Regards,
s/J. Bryan Sutherlin
J. Bryan Sutherlin"

At some point the following language was added to the September 14, 1972 commitment letter:

"The undersigned hereby assigns the above commitment to Texas Bank & Trust Company as additional security for deed of trust note in the amount of $750,000.00 dated September 20, 1972.

/s James C. Hadsell
James C. Hadsell"

The Texas Bank note, due on or before September 20, 1973, was never renewed or extended. On September 27, 1973, Signa Land Holdings, Inc., a corporation in which Hadsell was a stockholder, executed and delivered to Texas Bank a promissory note in the principal amount of $750,000.00 and due on or before December 26; 1973. Hadsell signed the note for Signa. On the same date, Texas Bank conveyed to Signa the bank's lien on the Euless tract, and endorsed and assigned the Texas Bank note to Signa without recourse or warranty. Signa, in turn, endorsed the Texas Bank note back to Texas Bank. George Stockwell, who was with Texas Bank from August, 1972, until April, 1975, and handled this transaction for the bank, testified by deposition that the Texas Bank note was collateral for the Signa note, dated September 27, 1973.

By letter dated September 30, 1975, Hadsell and Texas Bank made demand upon Lone Star to fund the loan commitment on November 24, 1975. This notice did not comply with the 60-day notice requirement of paragraph 8 of the loan commitment.

By letter dated November 24, 1975, Lone Star advised Texas Bank that it did not intend to correspond or otherwise communicate with the bank concerning the commitment. Subsequent to this refusal by Lone Star to honor its loan commitment, appellant declared the interim loan to Hadsell in default and foreclosed upon the Euless property. This suit was then instituted to recover the difference between the principal amount of the loan to Hadsell and the bid price in addition to trustee's fees incurred by the bank in the foreclosure sale.

Appellant's sole point of error reads, "THE TRIAL COURT ERRED IN GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT." By its subsequent argument, appellant contends that the summary judgment evidence established that a genuine issue of a material fact existed as to the three grounds which appellee alleged entitled it to summary judgment, (1) lack of privity of contract, (2)

conditions precedent, and (3) the insolvency of the borrower, which entitles it to a remand of the case to the trial court. We disagree.

Appellant concedes that under prior holdings the commitment letter standing alone is unenforceable by it as a third party beneficiary. See *Exchange Bank & Trust v. Lone Star Life Ins. Co.*, 546 S.W.2d 948 (Tex.Civ.App.—Dallas 1977, no writ); *Briercroft Savings & Loan Association v. Foster Financial Corp.*, 533 S.W.2d 898 (Tex.Civ.App.—Eastland 1976, writ ref'd n. r. e.); *Republic National Bank v. National Bankers Life Ins. Co.*, 427 S.W.2d 76 (Tex. Civ.App.—Dallas 1968, writ ref'd n. r. e.). However, appellant characterizes itself as an "assignee for collateral purposes," rather than a third party beneficiary, and relies on several differences in the facts of this case and those in the *Exchange Bank, Briercroft* and *Republic* cases.

Appellant contends that this case is different from the three previously cited in that Lone Star is estopped from relying on or has waived the nontransferability clause. Texas Bank argues the September 20, 1972, letter, in conjunction with the discussions between the parties prior to the issuance of the September 20 letter, gives rise to estoppel and/or waiver.

The bank argues that both parties actively negotiated the terms of the commitment letter with the understanding and contemplation that Hadsell would assign the commitment to the bank as additional collateral for the interim loan, and that it was contemplated at that time by the parties that the September 20 letter would serve to evidence Lone Star's consent and acquiescence to such assignment.

■ In a summary judgment case, the question is not whether the proof raises fact issues, but whether the proof establishes as a matter of law that there is no genuine issue of fact. *Gibbs v. General Motors Corporation*, 450 S.W.2d 827 (Tex.1970). We find that the summary judgment proof es-

tablishes as a matter of law that J. Bryan Sutherlin, acting on behalf of Lone Star Life, in no way consented to or waived prohibitions against transfer of the commitment letter.

Appellant fails to cite us any authority (and we find none) for its contention that it is "assignee for collateral purposes." The undisputed facts show appellant to be a third party beneficiary, and we do not believe this case may be distinguished from *Exchange Bank, Briercroft* and *Republic.*

■ The parties to a contract are presumed to contract for themselves, and when a third party asserts rights under it, the intent that it should inure for his benefit must be "clearly apparent," and any doubt should be resolved against such intent. *Exchange Bank & Trust v. Lone Star Life Ins. Co.*, supra at 952; *Republic National Bank v. National Bankers Life Ins. Co.*, supra at 79–80. Nowhere in the commitment letter is Texas Bank mentioned. The commitment letter, standing alone, is an agreement between Lone Star and Hadsell, which no third party has standing to enforce for its benefit.

■ However, contracts otherwise unassignable because of the personal nature of the subject matter may be assigned if the other party gives his consent, which may be ascertained from circumstances surrounding the parties and the language in the contract itself. *Rapid Transit Lines, Inc. v. Transit Ads, Inc.*, 401 S.W.2d 276, 284 (Tex. Civ.App.—Eastland 1966, no writ), citing 6 Tex.Jur.2d, sec. 18, pages 413 and 414. Appellant argues that the September 20 letter evidences appellee's consent to the assignment. We disagree.

Even though appellant's witness testified it was his *opinion* that the letter evidenced Lone Star's consent,[1] nowhere in the letter does there appear any language giving consent to the assignment.

---

1. "Well, originally, and then it's my opinion that this letter consented." Stockwell deposition, p. 66, lines 1–2.

Appellant does not claim that the September 20 letter is a separate enforceable contract. See *Exchange Bank & Trust v. Lone Star Life Ins. Co.*, supra at 953–954. Rather, Texas Bank argues that the letter estops Lone Star from refusing to fund the original commitment. It is true that where one party has by his words or conduct made to the other a promise or assurance which was intended to affect the legal relations between them and to be acted on accordingly, then once the other party has taken him at his word and acted on it, the party who gave the promise cannot afterward be allowed to revert to the previous relationship as if no such promise had been made. *Wheeler v. White*, 398 S.W.2d 93, 96 (Tex. 1965). Appellant contends the September 20 letter evidences Sutherlin's promise which then induced its interim loan to Hadsell. To the contrary, the September 20 letter contains no such promise, and, hence, Texas Bank's loan could not have been induced by a nonexistent promise.

Finally, we do not agree that the phrase "banking the commitment" appearing in the September 20 letter is ambiguous. In "banking the commitment," Hadsell did just as he did in the *Exchange Bank* case. In that case, Hadsell rested in the same position as he finds himself here. In fact, the *Exchange Bank* case involved the identical permanent lender, the same borrower and the same loan commitment letter. It is clear that by "banking the commitment," Lone Star meant Hadsell could present the letter to an interim lender to show that, assuming all conditions were met, Lone Star would loan $750,000 to Hadsell on the date and terms as contained in the commitment letter. Certainly, Texas Bank would need to weigh the benefits of making the interim loan against the possibility that Hadsell would not fulfill the necessary conditions. However, this is no concern of the long-term lender.

Our holding that Texas Bank has no standing to enforce the commitment on the grounds contended renders its contentions with respect to the borrower's insolvency and the 60-day notice requirement immate-rial. Accordingly, appellant's point of error is overruled.

Judgment of the trial court is affirmed.