IN THE MATTER OF THE FORECLOSURE OF THE DEED OF TRUST OF J. R. OWEN, SR.
AND WIFE, MILDRED M. OWEN

No. 8210SC630

(Filed 7 June 1983)

**Bills and Notes § 4; Mortgages and Deeds of Trust § 4.1— forbearance to levy on bank account—consideration for new note and deed of trust**

Where a husband and wife executed a demand note for $110,000.00 loaned to the husband for use in operating a tobacco warehouse, the promisee's forbearance to levy on a bank account owned by both promisors constituted sufficient consideration for a new note and deed of trust signed by both promisors so as to support the finding of a valid debt in a proceeding to foreclose the deed of trust.

Judge WELLS dissenting.

APPEAL by respondents from *Battle, Judge.* Judgment entered 18 March 1982 in Superior Court, WAKE County. Heard in the Court of Appeals 21 April 1983.

*Morgan, Bryan, Jones & Johnson, by Robert B. Morgan, for respondent appellants.*

*Blackburn & Gammon, by James L. Blackburn and Richard R. Gammon, for petitioner appellee.*

BECTON, Judge.

I

This case concerns the validity of a promissory note secured by a deed of trust, when one of the signers of the note and deed of trust was not involved in the underlying transaction. The question presented is whether forbearance to levy on a bank account owned by both promisors on the note and deed of trust constitutes consideration adequate to support foreclosure on the trust property pursuant to the terms of the note and deed.

We disagree with the Owens' contention that no valid debt existed between them and Charles Wilkins, the promisee on the note and beneficiary of the deed of trust. Because of the complicated factual background in this case, we first examine the transaction giving rise to this dispute.

II

The evidence tended to show that Charles Wilkins loaned a total of $110,000.00 to J. R. Owen in 1978, beginning with a $5,000 advance in August 1978. The Owens, J. R. and his wife, executed and delivered two promissory notes to Wilkins. The first, in the principal amount of $110,000, executed in November 1978, was signed and sealed by both J. R. Owen and his wife, Mildred. Under their signatures was noted: "Makers are doing business as Western Carolina Tobacco Warehouse No. 1." The second, in the principal amount of $90,875 and dated 18 April 1979, was secured by a deed of trust on the Owens' residence. Although Mildred Owen was the sole owner of the property, both she and her husband signed the deed of trust. The beneficiary of the deed of trust was Charles Wilkins; the trustee was Gregory Crampton. Payment on the August 1978 note was to be made "on or before the close of the 1978 Burley Tobacco Market, expected to be during the second week of January, 1979." The April 1979 note was due and payable on demand. Both notes reflected interest charges of 12% per annum.

Wilkins contends that during August of 1978, he loaned J. R. Owen $5,000 to obtain an option on several tobacco warehouses in Asheville, North Carolina, as part of a plan to force the owners already operating warehouses to purchase Owen's interest. Wilkins' $5,000 was to be repaid from the first of the anticipated proceeds. Also, Wilkins was to share any resulting profit with Owen equally. The plan was unsuccessful, and Owen had to operate the warehouse. From August through the latter part of November 1978, Charles Wilkins loaned J. R. Owen and additional $105,000 in five separate advances. The money was to be used to operate the warehouse. In November, when the loans totalled $110,000, Wilkins drafted a note for that amount and asked both Mr. and Mrs. Owen to sign it. Although the note was signed by both the Owens in November, it was erroneoulsy dated 24 August 1978, due to an error by Charles Wilkins.

As of the close of the Burley Tobacco Market in January 1979, the Owens had paid only $25,000 on the note. A portion of the funds constituting the outstanding balance, some $45,000, was in a bank account in Asheville. That account was owned by Mr. and Mrs. Owen, d/b/a Western Carolina Tobacco Warehouses.

Apparently during the latter part of 1978, the Internal Revenue Service (IRS) filed tax liens for $58,484.00 against the Owens in Wake County. Later, on 22 January 1979, the IRS levied on the Asheville bank account. At the time of the levy, the account contained $45,209. J. R. Owen conceded at the hearing that the money in the account was money that Wilkins had loaned him.

Because of the unique nature of the warehouse business, Wilkins contends that he agreed not to claim the funds in the Asheville account so that the outstanding checks to farmers and the IRS levy could be paid. Because of his increased exposure to liability, Wilkins drafted, and had both Owens execute, the new note, dated 18 April 1979, which was secured by a deed of trust on the Owens' residence, and which reflected the then outstanding principal balance and accured interest. That balance included the amount seized by the IRS and was payable on demand.

The Owens had made no further payments to Wilkins as of January, 1982. Wilkins contends that he, at that time, made a proper demand on the Owens to repay the note. They declined. He then instructed the trustee, pursuant to the terms of the deed of trust, to institute foreclosure proceedings against the Owens. A hearing was held on 25 February 1982 by an Assistant Clerk of Superior Court of Wake County. After making findings of fact, the Assistant Clerk concluded, *inter alia,* that a valid debt existed from J. R. Owen and Mildred Owen to Charles Wilkins; that the Owens were in default; that proper notice of the hearing had been given to all interested parties; and that the trustee could proceed to foreclose pursuant to his power of sale. The Owens gave notice of appeal. The Assistant Clerk stayed his order upon execution of a bond in the amount of $10,000.

The matter was then heard by Wake County Superior Court Judge Gordon Battle on 16 March 1982. After having heard the evidence from the trustee and the Owens, Judge Battle entered an order allowing the foreclosure to proceed. The Owens gave notice of appeal, and the order was stayed subject to their execution of a bond in the amount of $17,750.

III

Mr. and Mrs. Owen first argue that, although they both signed the 18 April 1979 note and deed of trust, the trial court

erred when it found as a fact and concluded that that note represents a valid indebtedness from them to Charles Wilkins. Although they admit that Wilkins advanced $110,000 to J. R. Owen, they contend that no benefit accrued to Mildred Owen because of the contract, and that the note is, therefore, invalid because one of its signers received no consideration. The Owens seek support from the facts that: (i) although Mildred Owen owned 10% of the warehouse business, she did not take an active role in its affairs and exercised no managerial control over its operation; and (ii) all of the funds loaned, details of the agreement negotiated, and monies actually transferred, were transferred to, loaned to, and negotiated solely with J. R. Owen. In Mildred Owen's words, "I was just told what to do, and that's what I did." That argument is unpersuasive.

First, findings of fact and conclusions of law based thereon are conclusive on appeal if those findings are supported by competent evidence. *Gaston-Lincoln Transit, Inc. v. Maryland Casualty Co.*, 285 N.C. 541, 206 S.E. 2d 155 (1974); *Investment Properties v. Norburn*, 281 N.C. 191, 188 S.E. 2d 342 (1972). We find plenary competent evidence to support the findings of the trial judge.

Consideration is the glue that binds the parties to a contract together. A mere promise, without more, is unenforceable. However, consideration is present when there is some benefit or advantage to the promisor or loss or detriment to the promisee. *Wolfe v. Eaker*, 50 N.C. App. 144, 272 S.E. 2d 781 (1980), *pet. for disc. review denied*, 302 N.C. 222, 277 S.E. 2d 69 (1981). It has also been held that consideration exists when the promisee, in exchange for the promise, does anything he is not legally bound to do, or refrains from doing anything he has a right to do, whether there is any actual loss to him as a benefit to the promisor. Justice Moore, writing for our Supreme Court, stated the "forbearance rule" thusly:

> It is not necessary that the promisor receive consideration or something of value himself in order to provide the legal consideration sufficient to support a contract. Forbearance to exercise legal rights is sufficient consideration for a promise given to secure such forbearance even though the forbearance is for a third party rather than that of the promisor. [Citation omitted.]

*Investment Properties* at 196, 188 S.E. 2d at 345.

Competent, uncontradicted evidence introduced by the trustee at the superior court hearing compels the conclusion that forbearance was the consideration in the case *sub judice.* Charles Wilkins testified that he promised J. R. Owen he would not seek to recover his funds in the Asheville account on the condition that Owen and his wife execute a new note and a deed of trust. That Wilkins has the right to levy on the Asheville account for the funds owed him is uncontroverted; that the IRS levy was for tax delinquencies of both J. R. and Mildred Owen is also uncontroverted. *A fortiori,* Wilkins' forbearance to attach the Owens' bank account enured to the benefit of *both* J. R. and Mildred Owen. Therefore, the note and deed of trust dated 18 April 1979 were supported by valuable consideration given at the execution of the contracts.

### IV

Because we find a valid indebtedness from both J. R. and Mildred Owen to Charles Wilkins for the reasons set out in Part III of this opinion, we summarily reject the Owens' second argument.

Accordingly, we affirm the order of the trial court.

Affirmed.

Judge EAGLES concurs.

Judge WELLS dissents.

Judge WELLS dissenting.

At the time the second note—the deed of trust note—was executed, no new money was advanced. The new note was a demand note, and, therefore, there was no foreclosure as to the debt. The "foreclosure" relied upon by the majority took place months before the second note and deed of trust were executed. I find the evidence to show a lack of consideration for the second note, and conclude that the trial court's necessary finding (labeled as a conclusion) of a valid debt, *see* G.S. 42-21.16(a) is not supported by the evidence. I must therefore respectfully dissent.