CHEMICAL REALTY CORPORATION v. HOME FEDERAL SAVINGS AND
LOAN ASSOCIATION OF HOLLYWOOD

No. 8628SC532

(Filed 20 January 1987)

1. **Contracts § 4.2— construction of hotel—purchase of construction loan—no consideration**

    In an action for an alleged breach of contract, the trial court correctly concluded that a letter issued by defendant to plaintiff promising to purchase a construction loan made by plaintiff to a third party was not a promise supported by consideration where plaintiff failed to show that the alleged consideration was bargained for, the approval letter itself made no recitation of consideration, and defendant's promise to purchase plaintiff's loan was not converted from a gratuitous promise to one supported by consideration solely by plaintiff's honoring of its obligations pursuant to its own construction loan agreement.

2. **Contracts § 14.2— hotel construction—permanent loan approval letter—construction lender not third party beneficiary**

    The trial court correctly concluded that plaintiff construction lender was not a third party beneficiary of defendant's permanent loan commitment where the record did not establish that defendant and the borrower intended by their loan agreement to confer a benefit directly upon plaintiff.

Chemical Realty Corp. v. Home Fed'l Savings & Loan

3. Contracts §§ 16, 17.1— hotel construction — permanent loan — conditions precedent — loan commitment not extended

In an action for breach of contract by a short-term construction lender against the anticipated permanent lender, the trial court correctly found and concluded that the obligation to close and fund the permanent loan was subject to express conditions precedent which were not substantially complied with prior to the expiration of the loan commitment, and that neither plaintiff nor the borrower requested an extension of the permanent loan commitment.

APPEAL by plaintiff from *Allen, C. Walter, Judge.* Judgment entered 12 December 1985 in BUNCOMBE County Superior Court. Heard in the Court of Appeals 11 November 1986.

Plaintiff brought this action on 20 December 1976 against defendant to recover damages for an alleged breach of contract. In its complaint, plaintiff claimed that defendant had agreed to a "takeout" or purchase of the plaintiff's construction loan to Landmark Hotel, Inc. (hereinafter Landmark). Plaintiff alleged that it had made a construction loan to Landmark in reliance on defendant's promise to provide the long-term financing of the Landmark Hotel. Defendant refused to make the long-term loan to Landmark after plaintiff had advanced funds under the construction loan. The trial court denied defendant's motion to dismiss for lack of jurisdiction. This order was upheld on appeal.

The case was then tried before the trial court sitting without a jury. After making findings of fact and conclusions of law, the court entered judgment for defendant. Plaintiff appealed. This Court reversed and remanded the judgment of the trial court in *Chemical Realty Corp. v. Home Fed'l Savings & Loan,* 65 N.C. App. 242, 310 S.E. 2d 33 (1983), *disc. rev. denied,* 310 N.C. 624, 315 S.E. 2d 689, *cert. denied,* 105 S.Ct. 128 (1984). Reference is made to that opinion for the additional factual background of this case.

We remanded the case because the record presented certain questions of fact which were not adequately addressed in the trial court's order but which had to be resolved before judgment could be properly entered. In particular, we held that on remand the trial court should resolve the following issues by proper findings and conclusions:

(1) Was there a promise by defendant, supported by consideration, to plaintiff to purchase plaintiff's construction loan?

(2) If defendant made no promise, did defendant's actions provide the basis for plaintiff to become a creditor beneficiary of defendant's permanent loan commitment?

(3) If plaintiff contracted with defendant, or had third party beneficiary status, what were the conditions precedent and material terms that had to be complied with before defendant's duty to plaintiff to perform arose?

(4) Were those terms and conditions substantially complied with?

(5) If Landmark and/or plaintiff had not fulfilled the conditions precedent and material terms on 14 October 1974, did plaintiff timely request defendant to extend the permanent loan commitment beyond 14 October 1974?

(6) If plaintiff did make a timely request to extend the permanent loan commitment, to what extent did plaintiff incur foreseeable and ascertainable damages by defendant's refusal to extend?

We further held that it was unnecessary to order a new trial and that the trial court should consider the case on remand on the existing record.

On remand, the trial court entered an amended judgment for defendant based on findings of fact and conclusions of law addressing the issues set forth above. Specifically, the court concluded that there was not a promise by defendant, supported by consideration, to plaintiff to purchase plaintiff's construction loan. The court further concluded that plaintiff was not a third party beneficiary of defendant's permanent loan commitment. Even assuming that plaintiff contracted with defendant or had third party beneficiary status, the court concluded that defendant's obligation to close and fund its permanent loan was subject to certain express conditions precedent which had not been substantially complied with prior to the expiration of the permanent loan commitment on 14 October 1974. The court also concluded that the permanent loan commitment expired on 14 October 1974 and that, even if an extension had been properly requested, plaintiff suffered no damages as a result of defendant's refusal to extend.

Plaintiff appealed.

---

---

*Parker, Poe, Thompson, Bernstein, Gage and Preston, by Sydnor Thompson and Fred T. Lowrance; and Herbert L. Hyde, P.A., by Herbert L. Hyde; and Van Winkle, Buck, Wall, Starnes and Davis, by Larry McDevitt, for plaintiff-appellant.*

*McCoy, Weaver, Wiggins, Cleveland & Raper, by John E. Raper, Jr. and Teresa C. Lee, and Roberts, Stevens & Cogburn, by John S. Stevens and Glenn S. Gentry, for defendant-appellee.*

WELLS, Judge.

[1]   Plaintiff contends that the court erred in concluding that the undated letter issued by defendant to plaintiff in early April 1973 (hereinafter approval letter) "was not a promise by Home Federal to Chemical, supported by consideration, to purchase its construction loan. . . ." We disagree.

In general,

> [a]n enforceable contract is one supported by consideration. *Investment Properties v. Norburn*, 281 N.C. 191, 188 S.E. 2d 342 (1972) . . . . It is well established that consideration sufficient to support a contract or a modification of its terms consists of "any benefit, right, or interest bestowed upon the promisor, or any forbearance, detriment, or loss undertaken by the promisee." 302 N.C. at 215, 274 S.E. 2d at 212. Consideration is the "glue" that binds parties together, and a mere promise, without more, is unenforceable. *In re Foreclosure of Owen*, 62 N.C. App. 506, 509, 303 S.E. 2d 351, 353 (1983).

*Lee v. Paragon Group Contractors*, 78 N.C. App. 334, 337 S.E. 2d 132 (1985), *disc. rev. denied*, 316 N.C. 195, 345 S.E. 2d 383 (1986). Moreover, the Restatement (Second) of Contracts § 71 (1979) provides, in pertinent part, that:

> § 71. Requirement of Exchange; Types of Exchange
>
> (1) To constitute consideration, a performance or a return promise must be bargained for.
>
> (2) A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise.

(3) The performance may consist of

(a) an act other than a promise, or

(b) a forbearance, or

(c) the creation, modification, or destruction of a legal relation.

"Bargained for" in this context means

the consideration and the promise bear a reciprocal relation of motive or inducement: the consideration induces the making of the promise and the promise induces the furnishing of the consideration. Here, as in the matter of mutual assent, the law is concerned with the external manifestation rather than the undisclosed mental state: it is enough that one party manifests an intention to induce the other's response and to be induced by it and that the other responds in accordance with the inducement. . . . But it is not enough that the promise induces the conduct of the promisee or that the conduct of the promisee induces the making of the promise; both elements must be present, or there is no bargain. . . . In such cases there is no consideration and the promise is enforced, if at all, as a promise binding without consideration under §§ 82-94. [Citations omitted.]

*Id.* at Comment b. In other words, " 'the promise and the consideration must purport to be the motive each for the other, in whole or at least in part; it is not enough that the promise induces the detriment or that the detriment induces the promise, if the other half is wanting.' " 17 Am. Jur. 2d Contracts § 92. *See also Foundation, Inc. v. Basnight,* 4 N.C. App. 652, 167 S.E. 2d 486 (1969) (" 'there is a consideration if the promisee, *in return for the promise,* does anything legal which he is not bound to do, or refrains from doing anything which he has a right to do. . . .' ") (Emphasis supplied.)

Paragraph 10 of the approval letter expressly provides, in pertinent part, that:

We have approved, in all respects the First Mortgage Real Estate Note and Deed of Trust, copies of which are attached hereto, and agree that at the appropriate time, as provided in the Commitment, we will purchase said First Real

Estate Note from you, without recourse, and accept the assignment of said Deed of Trust provided however that the loan is not in default under the terms of our Commitment or our loan documents.

Plaintiff contends that it "gave the following consideration and took the following actions in reliance on and pursuant to [the provisions in the approval letter]," namely: (1) it advanced $90,000 in commitment fees directly to defendant to extend the permanent commitment to 14 October 1974; (2) it supervised construction of the hotel; (3) it obtained title updates from Chicago Title Insurance Company to keep the title insurance in full force and effect; and (4) it advanced approximately 5 million dollars for the construction of the hotel. Plaintiff's argument is essentially that these actions constituted "performance" consideration for defendant's promise to purchase its loan.

We hold, however, that plaintiff has failed to show that the alleged "performance" consideration for defendant's promise was "bargained for" as required by Section 71 of the Restatement.

We initially note that the approval letter, itself, makes no recital of any consideration for defendant's promise. By producing evidence of its own reliance on defendant's promise to purchase its construction loan, plaintiff arguably has shown that its performance, *viz.*, its subsequent action in closing and disbursing its loan, was the motive or inducement for defendant's promise and thus was given "in exchange for" it.[1] But even assuming defendant's promise was the inducement for plaintiff's performance, plaintiff, who has the burden of proof, has not shown expressly that its performance was the inducement for defendant's promise.

Rather, plaintiff essentially argues that it is implicit from its closing and disbursement of the construction loan that defendant "bargained for" this performance when it promised to purchase plaintiff's loan. Plaintiff is suggesting by this argument that the mere evidence that plaintiff honored its obligations pursuant to its own construction loan commitment with Landmark, standing alone, is sufficient to convert defendant's promise to purchase

---

1. We note that it is even questionable whether defendant's promise was the inducement since plaintiff had already issued a construction loan commitment to Landmark, the borrower, *prior to* defendant's execution of the approval letter.

plaintiff's loan from a gratuitous one to one supported by consideration. To adopt plaintiff's reasoning in this regard would be tantamount to holding that any promise by a permanent lender to purchase the loan of a construction lender was implicitly supported by consideration so long as the construction lender ultimately closed and disbursed its loan. We decline to so hold.

We hold instead that plaintiff has failed to demonstrate that defendant's promise was anything but gratuitous, unsupported by "bargained for" consideration as required by Section 71, and thus unenforceable.[2] Accordingly we hold that the court did not err in concluding that defendant's promise to purchase plaintiff's loan in the approval letter was not supported by consideration.

[2]  Plaintiff contends the court erred in concluding that it was not a third party beneficiary to defendant's permanent loan commitment. We disagree.

> "It is well settled in North Carolina that where a contract between two parties is intended for the benefit of a third party, the latter may maintain an action in contract for its breach. . . ." [Citations omitted.] An intended beneficiary, despite a lack of privity, may sue on the contract, either for its performance or damages.

*Howell v. Fisher*, 49 N.C. App. 488, 272 S.E. 2d 19 (1980), *disc. rev. denied*, 302 N.C. 218, 277 S.E. 2d 69 (1981). The test is whether the parties to the contract intended to confer a benefit directly upon the third party or whether the benefit to the third

---

2. We note that plaintiff stresses on appeal that it relied on defendant's promise in the approval letter to purchase its construction loan in making its construction loan to Landmark. In this regard, the doctrine of promissory estoppel, a generalized theory of recovery based on reliance, arguably might serve as a substitute for the want of consideration for defendant's promise, thereby rendering this promise enforceable. *See Lee, supra; Wachovia Bank v. Rubish*, 306 N.C. 417, 293 S.E. 2d 749, *reh. denied*, 306 N.C. 753, 302 S.E. 2d 884 (1982). *See, generally*, Restatement (Second) of Contracts Section 90 (1979) and Metzger et al., *The Emergence of Promissory Estoppel as an Independent Theory of Recovery*, 35 Rutgers L. Rev. 472 (1983). However, the parties neither litigated below nor raised and argued on appeal the question of whether promissory estoppel applies to defendant's promise. Our review is limited to questions presented in the briefs. N.C.R. App. P. 28(a). Plaintiff has argued under this assignment of error that defendant's promise was supported by adequate consideration, and we thus have passed upon that question only. *See Swindell v. Overton*, 80 N.C. App. 504, 342 S.E. 2d 391 (1986).

party was merely incidental. *Vogel v. Supply Co.*, 277 N.C. 119, 177 S.E. 2d 273 (1970). The parties' "intent must be determined by construction of the 'terms of the contract as a whole, construed in the light of the circumstances under which it was made and the apparent purpose that the parties are trying to accomplish.'" *Lane v. Surety Co.*, 48 N.C. App. 634, 269 S.E. 2d 711 (1980), *disc. rev. denied*, 302 N.C. 219, 276 S.E. 2d 916 (1981).

The American Law Institute's Restatement of Contracts provides a convenient framework for analysis. Third party beneficiaries are divided into three groups: *donee* beneficiaries, where it appears that the "purpose of the promisee in obtaining the promise of all or part of the performance thereof is to make a gift to the beneficiary"; *creditor* beneficiaries, where "no purpose to make a gift appears" and "performance of the promise will satisfy an actual or supposed or asserted duty of the promisee to the beneficiary"; and *incidental* beneficiaries, where the facts do not appear to support inclusion in either of the above categories. Restatement of Contracts, § 133 (1932). While duties owed to donee beneficiaries and creditor beneficiaries are enforceable by them, Restatement of Contracts §§ 135, 136, a promise of incidental benefit does not have the same effect. "An incidental beneficiary acquires by virtue of the promise no right against the promisor or the promisee." Restatement of Contracts, § 147.

*Vogel, supra*, "[T]he law in this State as to *direct* third party beneficiaries is synonymous with the Restatement categories of donee and creditor beneficiaries." *Id.* "When a third person seeks enforcement of a contract made between other parties, the contract must be construed strictly against the party seeking enforcement." *Lane, supra.*

In *Exchange Bank and Trust v. Lone Star Life Ins. Co.*, 546 S.W. 2d 948 (Tx. App. 1977), plaintiff-bank brought an action against defendant-insurance company to enforce a loan commitment made by defendant to a corporation involved in land development. Plaintiff had made a short-term loan to the corporate borrower and sought as a third party beneficiary of defendant's loan commitment to require defendant to purchase plaintiff's loan. *Exchange Bank, supra*. Regarding defendant's commitment letter to the corporate borrowers, plaintiff argued that this

letter expressly provides that the personal guaranties of Hadsell and Belew held by [plaintiff] should be assigned to [defendant], that the deed of trust and guaranty agreements executed in connection with the bank's loan were acceptable to [defendant], that the title insurance policy to be furnished by the borrower should contain only the exceptions in the policy previously issued to [plaintiff] in connection with this loan, and that notice that [defendant] would be called on by the borrower to fund the loan would be given either by the borrower or by [plaintiff]. [Plaintiff] argues that the provision for assignment of the guaranties shows an intention that [plaintiff's] note itself should be assigned, and consequently, that the commitment obligated [defendant] to pay the proceeds of the loan directly to [plaintiff] (or to a title company for transmission to [plaintiff]), rather than to the borrower. It also urges the provision allowing notice to be given by the [plaintiff] as evidence of an intention to make [it] a third-party creditor beneficiary.

*Id.*

However, the Court held:

As the extrinsic summary-judgment proof in this case shows, banks making short-term loans on real estate customarily rely on long-term loan commitments as sources of funds to the borrowers for repayment of the short-term indebtedness, whether or not the short-term lender is named in the long-term commitment, and customarily the proceeds of the long-term loan are transmitted through a title company to the short-term lender. We do not see how naming the short-term lender in this commitment letter materially changes the substance of the transaction. The commitment in question obligates [defendant] to make a loan to the corporate borrower and to disburse the proceeds for the borrower's benefit. Therefore, . . . consummation of the long-term loan depends on the decision of the borrower, and any benefit to the short-term lender is incidental.

The right of a short-term lender to enforce such a commitment when the borrower is unable or unwilling to consummate it should not rest on implication. In this sense, we affirm our statement . . . that the parties to a contract are

presumed to contract for themselves, and that when a third party asserts rights under it, the intent that it should inure for his benefit must be "clearly apparent," and any doubt should be resolved against such intent. [Citations omitted.]

*Id. See also Texas Bank and Trust v. Lone Star Life Ins.*, 565 S.W. 2d 353 (Tx. App. 1978).

Plaintiff here essentially makes the same argument as the plaintiff in *Exchange Bank, supra.* Specifically, plaintiff argues that defendant knew that the borrower would obtain a construction loan from another lender which defendant would ultimately purchase to effectuate its loan. In this regard, plaintiff emphasizes that defendant extended its loan commitment pursuant to a letter dated 28 March 1973 for the express purpose of "facilitating the closing of the construction loan."

Following the reasoning of *Exchange Bank, supra*, we hold, however, that plaintiff was merely an incidental, rather than direct, beneficiary to defendant's loan commitment. The record here does not establish that defendant and the borrower, Landmark, intended by their loan agreement to confer a benefit directly upon plaintiff. *See Vogel, supra.* Plaintiff's position would confer third party beneficiary status on virtually all short-term lenders in permanent loan commitments. Accordingly, the court properly held that plaintiff was not a third party beneficiary to defendant's permanent loan commitment.

[3]   Despite plaintiff's contention to the contrary, even assuming, *arguendo*, that plaintiff was a third party beneficiary to defendant's permanent loan commitment or that the approval letter constituted a valid and enforceable contract supported by adequate consideration, defendant's obligation to close and fund its permanent loan was subject to certain express conditions precedent which had not been substantially complied with prior to the expiration of the permanent loan commitment on 14 October 1974.[3]

---

3. We note that, as the court concluded that the conditions precedent had not been *substantially* complied with, we need not address the question of whether substantial or strict performance of the conditions was required under these circumstances. *See, e.g., Brown-Marx Assoc., Ltd. v. Emigrant Sav. Bank*, 703 F. 2d 1361 (11th Cir. 1983) for a discussion of this question.

"The rule has long been established in this jurisdiction that one party's failure to comply with a condition precedent to a contract relieves the other party of its duty to perform under the contract . . . ." *Stonewall Insurance Co. v. Fortress Reinsurers Managers*, 83 N.C. App. 263, 350 S.E. 2d 131 (1986). "A condition precedent is a fact or event, 'occurring subsequently to the making of a valid contract, that must exist or occur before there is a right to immediate performance, before there is a breach of contract duty, before the usual judicial remedies are available.' " *Tire Co. v. Morefield*, 35 N.C. App. 385, 241 S.E. 2d 353 (1978). Further,

> In entering into a contract, the parties may agree to any condition precedent, the performance of which is mandatory before they become bound by the contract. . . . The contract "may be conditioned upon the act or will of a third person." . . . Conditions precedent are not favored by the law and a provision will not be construed as such in the absence of language clearly requiring such construction. [Citations omitted.]

*Cox v. Funk*, 42 N.C. App. 32, 255 S.E. 2d 600 (1979).

In *Cox*, the Court held that the provision "Subject to closing of house at 900 Hawthorne Rd. Sept. 15, 1977" included in the parties' contract for the sale of real property constituted a condition precedent to defendant's promise in the agreement to purchase plaintiff's house. *Cox, supra.* The *Cox* court found that "this condition precedent failed to materialize and, therefore, defendants did not breach a contractual duty" by refusing to close. *Id.*

When the trial court sits without a jury, as it did here, the standard of review on appeal is "whether there was competent evidence to support its findings of fact and whether its conclusions of law were proper in light of such facts." *In re Norris*, 65 N.C. App. 269, 310 S.E. 2d 25 (1983), *cert. denied*, 310 N.C. 744, 315 S.E. 2d 703 (1984).

The court here found and concluded that defendant's obligation to close and fund its permanent loan was subject to several express conditions precedent and that these conditions had not been substantially complied with prior to the expiration of the permanent loan commitment on 14 October 1974.

The first condition precedent which the court identified was that "there be a management contract in effect for the hotel approved by Home Federal." The court then concluded that this condition precedent had not been substantially complied with because "[n]o enforceable management contract was in effect for the hotel which had been approved by Home Federal."

Paragraph 4 of the permanent loan commitment specifically provided: that the loan was "subject to an acceptable management contract to be executed by the borrower and the Hyatt House Hotel Corp." Defendant later agreed to accept Motor Inn Management, Inc. (MIM) as the management company instead of Hyatt. Prior to 14 October 1974 the management contract with MIM collapsed, and neither Landmark nor plaintiff proposed a substitute management company acceptable to defendant.

Following *Cox, supra,* we hold that the court properly concluded that an acceptable management contract in effect for the hotel was a condition precedent to the closing of the permanent loan. We further hold that there was competent evidence to support the finding that no enforceable management contract was in effect for the hotel which had been approved by defendant as of 14 October 1974 and that the court's conclusion that this condition precedent had not been substantially complied with was proper in light of this finding. *See Norris, supra.*

Applying the foregoing analysis regarding the "management contract" condition precedent to the findings and conclusions concerning the remaining conditions precedent, we hold that there was competent evidence to support its findings and its conclusions were proper in light of these findings regarding the following conditions precedent identified by the court, namely:

(b) That Home Federal be delivered the Permanent Loan Deed of Trust or other security instrument evidencing a valid first lien on the hotel real property to secure a $6,000,000.00 loan evidenced by the First Mortgage Real Estate Note.

(c) That Home Federal be delivered a title insurance policy by a company acceptable to it insuring that the Permanent Loan Deed of Trust was a valid first lien under the laws of the State of North Carolina.

(d) That Home Federal receive written certification from all applicable governmental authorities indicating that the completed project had been accepted by them and that the hotel could be operated and utilized in accordance with the assumptions made in the feasibility report required under the Permanent Loan Commitment.

We further hold that the court properly concluded that the conditions precedent had not been substantially complied with as of 14 October 1974 in that:

(b) Neither Landmark nor Chemical could deliver the Permanent Loan Deed of Trust or other security instrument evidencing a valid first lien on the hotel real property to secure the $6,000,000.00 loan evidenced by the First Mortgage Real Estate Note nor the title insurance policy required to insure same.

(c) Neither Landmark nor Chemical could deliver a Certificate of Completion by the Housing Authority of the City of Asheville terminating its rights of reverter.

Accordingly, we hold that, even assuming, *arguendo*, that plaintiff was a third party beneficiary to defendant's permanent loan commitment or that the approval letter constituted a valid and enforceable contract supported by adequate consideration, defendant still was not obligated to close and fund its permanent loan as neither Landmark nor plaintiff had substantially complied with the foregoing conditions precedent set forth in the permanent loan commitment. *See Stonewall Insurance, supra.*

Despite plaintiff's contention to the contrary, the evidence supports the court's finding that neither plaintiff nor Landmark requested an extension of defendant's permanent loan commitment beyond 14 October 1974, and this finding, in turn, supports the court's conclusion that the commitment expired on 14 October 1974.

Paragraph 8 of the permanent loan commitment expressly provided that:

This commitment will be in full force and effect for a period of one (1) year from this date, subject; however, to the receipt of $60,000.00 not later than May 15, 1972, which fee is

non-refundable. In the event the borrower wishes to extend the commitment for an additional period of time the Association is willing to grant such extention, based on a commitment fee of $30,000.00 for each additional six-month period that such commitment remains in good standing. It is to be specifically understood that such fee must be paid fifteen (15) days prior to the expiration date of the outstanding commitment . . . .

Plaintiff emphasizes that it made a request for an extension on 14 October 1974 at the "closing of the takeout" which never came to pass. Plaintiff does not argue, and the record does not show compliance with the requirement in Paragraph 8 of the permanent loan commitment that the $30,000 commitment fee "must be paid fifteen (15) days prior to the expiration date of the outstanding commitment. . . ." Just as the provisions of the permanent loan commitment, discussed in the "conditions precedent" argument, *supra*, were conditions precedent to defendant's obligation to close its loan, the 15-day requirement in Paragraph 8 was a condition precedent to defendant's obligation to extend its loan commitment beyond 14 October 1974. The court thus properly concluded that "[a]s of October 14, 1974, neither Chemical nor Landmark had satisfied the conditions precedent for obtaining an extension of the [p]ermanent [l]oan [c]ommitment."

Given our disposition of plaintiff's prior appeal, *Chemical Realty, supra,* we do not reach plaintiff's evidentiary arguments. Given our disposition of this appeal, we also do not reach plaintiff's remaining non-evidentiary arguments.

Affirmed.

Judges BECTON and ORR concur.