VINCENT S. MEYER, ANNE K. MEYER AND ELIZABETH S. MEYER v. McCARLEY AND COMPANY, INC., BLEECKER MORSE, AND WHEAT, FIRST SECURITIES, INC.

No. 106

(Filed 26 June 1975)

1. **Rules of Civil Procedure § 56— summary judgment — when appropriate**
    Summary judgment is appropriate, upon motion therefor duly made, when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.

2. **Negligence § 29— recovery based on negligence — prerequisites**
    The prerequisites for recovery of damages for injury by negligence are (1) the existence of a legal duty, owed by the defendant to the plaintiff, to use due care, (2) a breach of that duty, and (3) the alleged negligent act or omission by the defendant must be the proximate cause of the injury of which the plaintiff complains.

3. **Brokers and Factors § 4; Negligence § 10— failure of broker to follow instructions — subsequent wrong by second broker — intervening negligence**
    In an action to recover for losses allegedly sustained by plaintiffs when defendant McCarley failed promptly to execute an alleged order by plaintiffs to sell shares of stock owned by plaintiffs and held by McCarley, the evidence tended to show that the male plaintiff bought 200 shares of stock for himself and 200 for each of the other plaintiffs, the female plaintiffs paid for their stock, the male plaintiff paid the balance of what he owed for his stock with a check drawn on a bank in which defendant Wheat was instructed to deposit the cash balance of plaintiff's account with Wheat, Wheat deposited only a portion of the balance in the bank and sent the remainder to male plaintiff's residence, male plaintiff's check to McCarley was dishonored by the bank because of insufficient funds, and McCarley refused to carry out male plaintiff's sell order on the 600 shares of stock held by it on the

ground that the stock had not been paid for; therefore, female plaintiffs could not recover against Wheat on the ground of negligence since McCarley's failure to comply with the male plaintiff's sell order was not reasonably foreseeable by Wheat at the time it allegedly failed to carry out male plaintiff's instructions concerning payment of its indebtedness to him but was instead an intervening wrongful act of a third party (if plaintiffs' allegations be true) which insulated the negligence of Wheat.

4. **Contracts § 14— third party beneficiaries — insufficiency of evidence — no recovery on contract**

Even if defendant Wheat was under a contractual duty to male plaintiff to pay its indebtedness to him by transmission of its check to his bank and Wheat failed to perform this duty, the female plaintiffs were not parties to that contract nor were they third party beneficiaries thereof where there was no evidence that the parties to such contract intended it to be for the benefit of the female plaintiffs, the female plaintiffs' accounts with Wheat were separate and distinct from that of the male plaintiff, and the balances due them upon such accounts were paid to them by Wheat in accordance with instruction of their agent; consequently, the female plaintiffs had no standing to sue for breach of the contract, if any, between the male plaintiff and Wheat.

5. **Contracts § 14— incidental beneficiary — no rights against promisor or promisee**

It sometimes happens that a person who is neither the promisee of a contract nor the party to whom performance is to be rendered will derive a benefit from its performance, but such incidental beneficiary acquires by virtue of the promise no right against the promisor or the promisee.

APPEAL by defendant Wheat, First Securities, Inc., from the decision of the Court of Appeals, reported in 24 N.C. App. 418, 210 S.E. 2d 893, reversing summary judgment by *Brewer, J.*, at the 10 June 1974 Civil Session of DURHAM, Hedrick, J., dissenting in part.

The plaintiffs sued McCarley and Company, Inc. (hereinafter called McCarley), Morse, its employee, and Wheat, First Securities, Inc. (hereinafter called Wheat), for losses allegedly sustained by them when McCarley failed promptly to execute an alleged order by the plaintiffs to sell shares of stock owned by the plaintiffs. The plaintiffs contend that a failure by Wheat to comply with instructions given it by Vincent S. Meyer, father of the other two plaintiffs, caused the delay by McCarley in executing the order to sell the stock and the resulting loss to the plaintiffs.

All of the defendants moved for summary judgment against all of the plaintiffs. These motions were heard upon the plead-

ings, affidavits of Vincent S. Meyer and Morse and lengthy depositions of Vincent S. Meyer, Morse and officers and employees of McCarley and of Wheat. Brewer, J., granted all of these motions and gave summary judgment in favor of each defendant against each plaintiff, except that the motions of McCarley and Morse for summary judgment against Vincent S. Meyer were denied. All three plaintiffs appealed to the Court of Appeals from such judgments against them. McCarley and Morse did not appeal from the denial of their motion for summary judgment against Vincent S. Meyer. The Court of Appeals reversed the summary judgments in favor of Wheat and the summary judgments in favor of McCarley and Morse. Hedrick, J., dissented from the reversal of the summary judgments in favor of Wheat against Anne K. Meyer and Elizabeth S. Meyer, concurring in the reversals of the other summary judgments.

By reason of the dissent of Hedrick, J., Wheat appealed to the Supreme Court from the reversal of the judgments in its favor against Anne K. Meyer and Elizabeth S. Meyer. Appellate review of the decision of the Court of Appeals was not sought by McCarley or Morse or by Wheat with reference to the reversal of its judgment against Vincent S. Meyer. Consequently, the present appeal relates solely to whether summary judgment was properly entered by Brewer, J., in favor of Wheat against Anne K. Meyer and Elizabeth S. Meyer. Only so much of the allegations and of the supporting documents on motion for summary judgment as relates to the action of these plaintiffs against Wheat is here set forth.

The material facts alleged in the complaint are:

On 6 September 1972, the three plaintiffs purchased through McCarley 200 shares each of the common stock of Levitz Furniture Corporation. McCarley opened a separate account for each plaintiff. Third-party trading agreements were entered into whereby Vincent S. Meyer was authorized to sell shares owned by Anne and Elizabeth. In due time Anne and Elizabeth each paid for her 200 shares of the Levitz stock, giving her personal check therefor.

To pay for his 200 shares, Vincent S. Meyer, through McCarley, arranged for the transfor to McCarley, for sale by it and retention of the proceeds in his account with McCarley, certain stock then held for his account by Wheat and gave McCarley his check for the balance. On 15 September 1972, this

Meyer v. McCarley and Co.

check was dishonored by the drawee bank because of insufficient funds. Such insufficiency of funds was due to the failure of Wheat to carry out Vincent S. Meyer's instruction to transfer to his credit in the drawee bank the full cash balance in Vincent S. Meyer's account with Wheat. Vincent S. Meyer had advised Wheat that the funds so to be transferred would be required to cover a check which he was drawing upon the drawee bank. By negligence Wheat so deposited in the drawee bank to the credit of Vincent S. Meyer only a portion of the balance then in his account with Wheat and mailed to Vincent S. Meyer's home a check for the remainder.

On 28 September 1972, Vincent S. Meyer directed McCarley to sell the entire 600 shares of the Levitz stock at a price between $46.00 and $47.00 per share. McCarley refused to carry out the "sell order" on the ground that the stock had not been paid for. On that date the closing price of the Levitz stock on the market was $47.00 per share. On the following day the market price of Levitz stock dropped sharply. Vincent S. Meyer acted promptly to make the necessary funds available to cover his check to McCarley so that McCarley would sell the Levitz stock. The stock was sold on 10 October 1972 for prices ranging from $28.625 to $28.125.

The plaintiffs sue for the difference between the prices so obtained and $47.00 per share. They allege that their loss was caused by the negligence of Wheat and, alternatively, that the instruction by Vincent S. Meyer, acquiesced in by Wheat, constituted a contract whereby Wheat promised to deposit the said funds in the drawee bank to the account of Vincent S. Meyer and, through the breach of such contract by Wheat, the plaintiffs sustained the said loss through the delay of the sale of their stock by McCarley.

In its answer Wheat alleges the plaintiffs have failed to state a claim against it on which relief can be granted. Wheat admits:

Vincent S. Meyer had a cash balance in his account with Wheat in the amount of $6,244.77 and was so advised by Wheat in response to his inquiry. Wheat caused to be transferred to the credit of Vincent S. Meyer in the drawee bank $5,281.64 and mailed its check for the remainder ($953.13) to Vincent S. Meyer at his home. The closing price of Levitz stock on 28 September 1972 was $47.00.

Meyer v. McCarley and Co.

The deposition of John N. McCarley, Jr., officer and controlling stockholder of McCarley, is to the effect that he is aware of no regulation of the Securities Exchange Commission prohibiting a broker from carrying out a customer's order for the sale of stock which has not been paid for and McCarley has no such policy. Thus, its employees can sell stock for which the customer has not paid. The deposition of Raymond E. Quinn, an employee of McCarley, is to the same effect. The deposition of Paul J. Strauss, an employee of Wheat, is to the effect that he knows of no New York Stock Exchange regulation or any other rule or regulation which prevents a broker from executing a sell order for stock for which the customer has not fully paid. The deposition of James W. Marshall, Jr., an employee of McCarley, is to the effect that he knows of no policy of the McCarley firm to that effect but he, himself, followed that policy, and Morse, the employee of McCarley who handled the plaintiffs' accounts, told Vincent S. Meyer that the stock could not be sold because payment therefor had not been made. According to the deposition of Marshall, the daughters were not involved in that.

The deposition of Doris Corby, an employee of Wheat, is to the effect that Vincent S. Meyer, Anne and Elizabeth had separate accounts with Wheat. In response to a telephone inquiry from Vincent S. Meyer, Mrs. Corby informed him as to the amount of the balances in each account. She had no idea as to why he wanted to withdraw the balances and had no reason to ask him. He requested her to send his money and that of Anne to the Second National Bank in Richmond, Virginia, and to send Elizabeth's money to her at her address in California.

The deposition of Vincent S. Meyer is to the effect that he and his two daughters had separate accounts with Wheat and with McCarley. He purchased 200 shares of Levitz stock for himself, 200 shares for Anne and 200 shares for Elizabeth, three separate purchase orders being written up by McCarley. When informed by Mrs. Corby of the amounts of the cash balances in each of the accounts with Wheat, he told her, "I had bought some stock and I need to pay for it," and asked her to send checks for the balances in the three accounts to him at his home address. Later he telephoned her and requested her to send his and Anne's balances to the bank in Richmond and to send Elizabeth's balance to her in California.

Meyer v. McCarley and Co.

The deposition of Morse, the employee of McCarley who handled the Meyer accounts, was to the effect that Meyer and each of his daughters had separate accounts with McCarley and 200 shares of Levitz stock was purchased for each account. Morse told Meyer the stock could not be sold until it was paid for. He knows of no such regulation of the New York Stock Exchange. The Levitz shares purchased by Anne and Elizabeth were paid for in full by them. All 600 shares were sold in October 1972.

*Newsom, Graham, Strayhorn, Hedrick, Murray & Bryson, by E. C. Bryson, Jr., for defendant appellants.*

*Powe, Porter, Alphin & Whichard, P.A., by J. G. Billings, for plaintiff appellees.*

LAKE, Justice.

The record reveals no material issue of fact between Wheat on the one hand and Anne Meyer and Elizabeth Meyer on the other. It is not controverted that each of them fully paid the purchase price of the 200 shares of Levitz stock held in her account by McCarley. The plaintiffs allege McCarley was given an order to sell such stock at a price, which could have been obtained on the day the order was given, while McCarley denies that it received an order to sell the stock owned by Anne Meyer and Elizabeth Meyer, but that is not a matter at issue as between these plaintiffs and Wheat. It is further not controverted that prior to the opening of their accounts with McCarley, these plaintiffs and Vincent S. Meyer each had an account with Wheat in each of which there was a cash balance due the customer; Vincent S. Meyer ordered these accounts closed as he was authorized to do; he instructed Wheat to deposit the amount so due him in the bank in Richmond upon which he was about to draw a check and Wheat told him it would do so; by its error, Wheat failed so to deposit all of the balance due Vincent S. Meyer and, as a result, the check given by him to McCarley in payment of his 200 shares of Levitz stock was dishonored by the drawee bank.

[1] Summary judgment is appropriate, upon motion therefor duly made, when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter

of law." Rule 56 of the Rules of Civil Procedure, G.S. 1A-1; *McNair v. Boyette,* 282 N.C. 230, 192 S.E. 2d 457; *Blades v. City of Raleigh,* 280 N.C. 531, 187 S.E. 2d 35; *Kessing v. National Mortgage Corp.,* 278 N.C. 523, 180 S.E. 2d 823.

The plaintiffs contend that they sustained a loss by reason of Wheat's negligence in failing to follow the instructions given it by Vincent S. Meyer in making payment of the money which Wheat owed him. They also contend that such failure by Wheat was a breach of its contractual obligation.

[2] The first prerequisite for recovery of damages for injury by negligence is the existence of a legal duty, owed by the defendant to the plaintiff, to use due care. *McNair v. Boyette, supra; Moody v. Kersey,* 270 N.C. 614, 155 S.E. 2d 215; *Luttrell v. Mineral Co.,* 220 N.C. 782, 18 S.E. 2d 412; 86 C.J.S., Torts, § 6; 74 Am. Jur. 2d, Torts, § 8. The second prerequisite is a breach of that duty. The plaintiffs, Anne and Elizabeth Meyer, have not alleged or shown any interest in, or right to, the balance owed by Wheat to Vincent S. Meyer, their father. Their accounts with Wheat were separate and distinct from his. They could not have maintained an action against Wheat to collect the balance due him. They do not contend that Wheat failed to pay to them, or either of them, the full amount owed by Wheat in accordance with the instructions given Wheat by their agent, Vincent S. Meyer. Whatever negligent failure there may have been by Wheat in carrying out the instructions of Vincent S. Meyer, concerning the payment of the balance due him, was not a violation of a duty owed to his daughters, or either of them.

The third prerequisite to a right of action for damages for negligence is that the alleged negligent act or omission by the defendant was the proximate cause of the injury of which the plaintiff complains. *McNair v. Boyette, supra; Moody v. Kersey, supra.* Assuming, for the moment, that Wheat owed a legal duty to Anne and Elizabeth Meyer to use due care to send to the designated bank in Richmond the full amount owed by Wheat to Vincent S. Meyer and that Wheat defaulted in the performance of that duty, Wheat would be liable for no loss sustained by Anne and Elizabeth Meyer if a wrongful act by another person, not reasonably foreseeable by Wheat, intervened between Wheat's default and the injury of which these plaintiffs complain and if the injury would not have occurred but for such intervening wrong. *Butner v. Spease,* and *Spease v. Butner,* 217 N.C. 82, 6 S.E. 2d 808. See also: *McNair v. Boyette, supra;*

Meyer v. McCarley and Co.

*Riddle v. Artis,* 243 N.C. 668, 91 S.E. 2d 894; *Potter v. Frosty Morn Meats, Inc.,* 242 N.C. 67, 86 S.E. 2d 780; *Loving v. Whitton,* 241 N.C. 273, 84 S.E. 2d 919; *McLaney v. Motor Freight, Inc.,* 236 N.C. 714, 74 S.E. 2d 36; Strong, N. C. Index 2d, Negligence, § 10.

The plaintiffs, Anne and Elizabeth Meyer, allege in their complaint that, through their agent, Vincent S. Meyer, they ordered McCarley to sell their Levitz stock, held by McCarley, and that the sale price specified by them in such instruction could have been obtained at the time the instruction was given. They allege that McCarley refused to carry out this instruction for the reason that Vincent S. Meyer had not paid for his own shares of the Levitz stock. If, as McCarley contends, no such "sell order" was given, the alleged default by Wheat in its procedure for paying its indebtedness to Vincent S. Meyer had no causal relation to any loss sustained by Anne and Elizabeth Meyer through the decline of the Levitz stock on the market. If such "sell order" was given, the failure of McCarley to sell the stock of Anne and Elizabeth Meyer was an intervening wrong by McCarley which could not reasonably have been foreseen by Wheat as a probable result of Wheat's own negligence in disregarding Vincent S. Meyer's instruction to it concerning the payment of its indebtedness to him.

[3] As between Wheat and the plaintiffs, the giving and failure to follow the "sell order" are not in controversy. It is likewise uncontroverted, between them, that Anne and Elizabeth Meyer had paid in full for the Levitz shares held by McCarley for their account. Furthermore, it is conceded by the deposition of the president of McCarley that even had the stock held for these plaintiffs not been paid for, that circumstance would not prevent the execution of a "sell order." Our attention has been called to no rule, regulation or custom of any stock exchange or of any regulatory agency which would require, or even justify, the rejection by a broker of his customer's "sell order" for the reason that the customer had not paid for the purchase of such stock. We are aware of no rule of law which would have that effect. The alleged failure of McCarley to comply with the "sell order" given it by Vincent S. Meyer with reference to the stock held by McCarley for the accounts of Anne and Elizabeth Meyer was, therefore, not reasonably foreseeable by Wheat at the time it allegedly failed to carry out the instructions given it by Vincent S. Meyer with reference to the payment of its indebtedness

to him. It was an intervening wrongful act of a third party (if the plaintiffs' allegations be true) which insulated the alleged negligence of Wheat. Wheat, therefore, cannot be held liable for the resulting loss sustained by the plaintiffs Anne and Elizabeth Meyer on the theory of negligence.

[4] Assuming that Wheat was under a contractual duty to Vincent S. Meyer to pay its indebtedness to him by transmission of its check to his bank and that Wheat failed to perform this duty, the plaintiffs, Anne and Elizabeth Meyer, were not parties to that contract nor were they third-party beneficiaries thereof. Consequently, they have no standing to sue for its breach. *Vogel v. Supply Co.* and *Supply Co. v. Developers, Inc.,* 277 N.C. 119, 177 S.E. 2d 273; *Trust Co. v. Processing Co.,* 242 N.C. 370, 88 S.E. 2d 233; *Land Co. v. Realty Co.,* 207 N.C. 453, 177 S.E. 335. Nothing whatever in the pleadings, or in the depositions and affidavits filed for consideration of the court at the hearing on the motion for summary judgment, indicates that the parties to such contract intended it to be for the benefit of Anne or Elizabeth Meyer. Their accounts with Wheat were separate and distinct from that of Vincent S. Meyer. The balances due them upon such accounts were paid to them by Wheat in accordance with instruction of their agent.

[5] In Williston on Contracts, 3rd Ed., § 402, it is said: "It sometimes happens that a person who is neither the promisee of a contract nor the party to whom performance is to be rendered will derive a benefit from its performance. Such a person is neither a donee beneficiary nor a creditor beneficiary, but belongs to the third type—the incidental beneficiary. An incidental beneficiary acquires by virtue of the promise no right against the promisor or the promisee." In *Kelly v. Richards,* 95 Utah 560, 83 P. 2d 731, 129 A.L.R. 164, the Court said, "A third person cannot maintain an action upon a simple contract merely because he would receive a benefit from its performance or because he is injured by the breach thereof." In 17A C.J.S., Contracts, § 518, it is said: "As a general rule, one who is not a party to a contract, but who has been injured by a breach thereof, cannot maintain an action for such breach or derive any benefit therefrom." In 17 Am. Jur. 2d, Contracts, § 297, it is said:

> "Ordinarily, the obligations arising out of a contract are due only to those with whom it is made; a contract cannot be enforced by a person who is not a party to it or in

privity with it, except under a real party in interest statute, or under certain circumstances, by a third-party beneficiary. As a general rule, whenever a wrong is founded upon a breach of contract, the plaintiff suing in respect thereof must be a party or privy to the contract, and none but a party to a contract has the right to recover damages for its breach against any of the parties thereto. It has been said that he alone to whom a promise is made or in whom its legal interest is vested can enforce performance or complain of its breach." ·

Nothing in the pleadings or in the depositions or affidavits contained in the record suggests any intent by Vincent S. Meyer or Wheat that the alleged contract, whereby Wheat was to pay its indebtedness to Vincent S. Meyer by sending the amount of the balance in his account with Wheat to the bank designated by him for deposit therein to his credit, was intended to benefit in any way either Anne or Elizabeth Meyer. Neither his statement to Wheat that he wanted to buy other stock nor his statement that he needed his money to cover a check he was about to issue indicates any intent to benefit them by such transfer of the balance due him.

It follows that no cause of action in favor of either Anne or Elizabeth Meyer against Wheat has been alleged in their complaint and, the facts being uncontroverted as between these parties, the Superior Court properly granted Wheat's motion for summary judgment against the plaintiffs Anne K. Meyer and Elizabeth S. Meyer and dismissed their action against Wheat. The Court of Appeals erred in reversing that portion of the judgment of the Superior Court. That portion of the judgment of the Court of Appeals is, therefore, reversed.

Reversed.