JAMES L. OLIVER, JR., AND CRAVEN VENTURE MANAGEMENT, INC.
v. JOHN B. ROBERTS AND JOHN ROBERTS, LTD.

No. 8021SC275

(Filed 30 October 1980)

1. **Rules of Civil Procedure § 56— motion to dismiss — consideration of matters outside pleadings**

    Where the trial court considered matters outside the pleadings in ruling on a motion to dismiss pursuant to G.S. 1A-1, Rule 12(b)(6), the motion should be treated as a motion for summary judgment and be disposed of in the manner provided in G.S. 1A-1, Rule 56.

2. **Joint Ventures § 1— failure of joint venture — no breach of fiduciary duty**

    In an action to recover damages for defendant's alleged breach of his

fiduciary duty to plaintiffs in a joint venture formed for the purpose of acquiring the assets of a corporation, summary judgment was properly entered for defendant where plaintiffs' materials tended to show that the parties obtained an option to purchase the corporate assets; in their efforts to obtain sufficient financial resources to make the purchase, the parties at the suggestion of defendant sought the involvement of a third party; the third party agreed to invest $250,000 to $300,000 in the venture if the three parties would invest $500,000 of their own money; plaintiffs were unable to raise the necessary capital and negotiations with the third party ended; and the third party subsequently purchased the corporate assets in his own right, made defendant an officer in a new corporation formed to acquire the assets, and gave defendant the option to purchase fifty percent of the assets for fifty percent of his investment therein, since plaintiffs failed to present evidence of specific instances of conduct by defendant which was contrary to the interests of plaintiffs in the corporate assets, and all the evidence showed that the joint venture was unsuccessful because plaintiffs failed to obtain the money necessary to enter into an agreement with the third party to purchase the corporate assets.

APPEAL by plaintiffs from *Rousseau, Judge.* Order entered 17 December 1979 in Superior Court, FORSYTH County. Heard in the Court of Appeals 17 September 1980.

The facts of this case are summarized as follows. In December 1975, plaintiffs and defendants began a series of meetings wherein they considered the possibility of acquiring the Helio Courier, Stallion, and Twin aircraft assets of the General Aircraft Corporation (hereinafter GAC). During the early months of 1976, the parties began negotiating with GAC for the purchase of these assets with a view toward either reselling them at a profit or using them in the operation of a business. Neither the terms nor the duration of the parties' venture was incorporated in a writing. In April 1976, Ben F. Craven, the sole shareholder, officer, and director of plaintiff Craven Venture Management, Inc., submitted on behalf of the parties a revised, written offer to GAC to purchase their Helio Courier, Stallion, and Twin aircraft properties. This revised offer was subsequently accepted by GAC. Through the contributions of the parties, an option to purchase the assets was obtained. In their efforts to obtain the sufficient financial resources to consummate the purchase, the parties at the suggestion of defendant Roberts sought the involvement of one Alvin Goldhush of Winchester, Virginia. Roberts had attempted to purchase these same GAC assets in 1975 prior to his affiliation with the plaintiffs and had then unsuccessfully sought to enlist Goldhush as an investor.

Goldhush agreed to invest from $250,000 to $300,000 in the venture if the three parties would invest $500,000 of their own money. Plaintiffs were unable to raise the necessary capital, and negotiations between the parties and Goldhush ended. Goldhush subsequently purchased the GAC assets in his own right and offered to sell defendant a fifty percent interest therein in exchange for $550,000, one-half of Goldhush's investment.

Plaintiffs contend that they and defendant John B. Roberts, acting individually and as officer for defendant John Roberts, Ltd., had formed a joint venture for the purpose of acquiring the GAC assets; that before the venture was either successfully completed or terminated, defendant abandoned the venture and sought to obtain the same property in his individual capacity; that defendant did in fact obtain an interest in such property; and that such conduct was in breach of a fiduciary duty owed by defendant to plaintiffs as co-venturers.

Plaintiffs prayed the court for relief in the form of an accounting pursuant to G.S. 59-52, a constructive trust imposed upon any profits derived by defendants from the use of the contested assets, and treble damages and attorneys' fees pursuant to G.S. 75-16 and G.S. 75-16.1.

The trial court granted summary judgment for defendants. Plaintiffs appealed.

*White & Crumpler, by Fred G. Crumpler, Jr., and Robert B. Womble, for plaintiff appellant.*

*Hudson, Petree, Stockton, Stockton & Robinson, by Norwood Robinson and F. Joseph Treachy, Jr., for defendant appellee.*

ERWIN, Judge.

The question presented for our review is whether the trial court erred in granting defendants' motions to dismiss and for summary judgment pursuant to G.S. 1A-1, Rules 12(b)(6) and 56, of the Rules of Civil Procedure. We find that the motions were properly allowed.

[1] We note at the outset that in granting defendants' motions, the trial court considered, *inter alia,* the depositions of the parties, the plaintiffs' amended complaint, the affidavits of

plaintiffs, the affidavit of Alvin A. Goldhush, and the defendants' interrogatories to plaintiff Craven Management, Inc., and the answers thereto by Ben F. Craven, Jr. Because the trial court considered matters outside the pleadings in reaching its decision, the motion should be treated as a motion for summary judgment and disposed of in the manner provided in Rule 56. *Kessing v. National Mortgage Corp.*, 278 N.C. 523, 180 S.E. 2d 823 (1971).

Where a motion of summary judgment is granted, the critical questions for determination upon appeal are whether on the basis of the materials presented to the trial court, there is a genuine issue as to any material fact and whether the movant is entitled to judgment as a matter of law. *Barbour v. Little*, 37 N.C. App. 686, 247 S.E. 2d 252, *cert. denied*, 295 N.C. 733, 248 S.E. 2d 862 (1978). In this regard, we find it instructive to note that "[w]hether there is a *genuine issue of fact* is not the question. The question is whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is a *genuine issue as to any material fact*." (emphasis in original) *Tuberculosis Assoc. v. Tuberculosis Assoc.*, 15 N.C. App. 492, 494, 190 S.E. 2d 264, 265 (1972). Therefore, although the presence of immaterial, factual questions does not preclude the grant of summary judgment, the moving party retains the continuing burden of establishing the nonexistence of any triable issue of fact. The movant may discharge this burden either by proving that an essential element of the opposing party's claim is nonexistent or by showing through discovery that the opposing party cannot produce evidence to support an essential element of its claim. *Zimmerman v. Hogg & Allen*, 286 N.C. 24, 209 S.E. 2d 795 (1974).

[2] Plaintiffs contend that the case *sub judice* is one where Roberts as co-venturer withdrew from the venture and in concert with a third party, pursued the very object of the venture. Plaintiffs maintain that it was this conduct by Roberts that prevented them from purchasing the GAC assets. In support of these contentions, plaintiffs allege that: Roberts negotiated directly with Goldhush "without keeping Craven and Oliver advised of what was going on"; Goldhush has made Roberts a vice president in the new corporation formed to acquire the GAC assets; Goldhush has reimbursed Roberts for all the expenses Roberts had incurred while attempting to negotiate for

the purchase of the assets; and Roberts has received from Goldhush an option to purchase fifty percent of the GAC assets for fifty percent of Goldhush's investment therein. While there exist factual disputes with respect to most of the above allegations, it is significant to note that even if all of plaintiffs' contentions are admitted, they would not assist plaintiffs in discharging their burden of establishing a causal relation between some specific act or omission by defendants and plaintiffs' failure to effect the purchase of the aircraft assets. It is well settled that proof of such a causal relation is an essential element of plaintiffs' cause of action. *See Meyer v. McCarley and Co., Inc.,* 288 N.C. 62, 215 S.E. 2d 583 (1975). We note further that the largely baseless nature of plaintiffs' allegations is illustrated by the deposition testimony of Ben F. Craven, Jr. Craven testified in pertinent part:

> "To the very best of my knowledge, Roberts cooperated in every possible way to try to put this deal together. He contacted all the people he could, including Goldhush.

> \*   \*   \*

> I cannot specifically state anything that Roberts did that was against my best interest as I alleged in the complaint."

Plaintiffs' pleadings, affidavits, deposition testimony, and answers to interrogatories are otherwise void of any allegations of specific instances of active or omissive conduct by defendants which was contrary to the interests of plaintiffs in the GAC assets.

In viewing the record, as we must, in the light most favorable to plaintiffs, we are compelled to conclude that plaintiffs' evidence fails to raise a genuine issue of material fact with respect to their allegations that defendants detrimentally affected plaintiffs' ability to acquire the GAC assets. Indeed, all the evidence indicates that the efforts of the parties to acquire the aircraft assets failed because of plaintiffs' inability or unwillingness to borrow the money necessary to enter into an agreement with Goldhush.

Ordinarily where an agreement of joint venture fails to fix a definite date of termination, the agreement remains in force until its purpose is accomplished or until such accomplishment

has become impracticable. 46 Am. Jur. 2d, Joint Ventures, § 30, p. 51. Where, as here, it is the failure of the complaining parties to make agreed contributions to the common undertaking which makes continuation of the effort impracticable, such parties have no claim to share any of the benefits or profits which may be subsequently derived therefrom. 46 Am. Jur. 2d, Joint Ventures, § 45, p. 65.

The judgment below is

Affirmed.

Judges ARNOLD and WELLS concur.