**RPR & ASSOCIATES, Plaintiff,**

v.

**O'BRIEN/ATKINS ASSOCIATES, P.A. and Tai and Associates, Defendants.**

**No. 1:94CV00706.**

United States District Court,
M.D. North Carolina,
Durham Division.

April 3, 1998.

516

518

Betty S. Waller, Wilson & Waller, P.A., Raleigh, NC, Terry E. Haskins, Greenville, SC, Will Rogers Helton, Jr., RPR & Assoc., Inc., W. Columbia, SC, for RPR & Associates, Inc.

Donald R. Teeter, John Lewis Shaw, Poyner & Spruill, L.L.P., Raleigh, NC, for O'Brien/Atkins Associates, P.A.

## MEMORANDUM OPINION

OSTEEN, District Judge.

These matters come before the court on the parties' cross motions for summary judgment. For the following reasons, the court will grant Plaintiff's motion and will grant in part Defendant's motion.

### I. Background

Plaintiff was one of four prime contractors for the State of North Carolina on a construction project located at the University of North Carolina–Chapel Hill (UNC). Defendant was the project architect. During the course of the project, Plaintiff filed claims with the University, Defendant, and the State of North Carolina (State). After completion of construction in 1993, Plaintiff filed formal claims with the North Carolina Department of Administration alleging failures of performance and negligence by UNC and the State. In March 1994, RPR filed this federal diversity jurisdiction action alleging that Defendant committed numerous negligent and tortious acts and omissions that proximately caused Plaintiff substantial damage, losses, and delay on the project.[1]

In April 1995, Defendant filed a motion to dismiss which this court denied. After the

---

1. The claims filed by plaintiff with the Department of Administration and against OBA in this action are related but are not identical. *See RPR & Assoc. v. O'Brien/Atkins Assoc., P.A.,* 921 F.Supp. 1457 (M.D.N.C.1995), *aff'd* 103 F.3d 120 (4th Cir.1996). In January 1998, Plaintiff voluntarily dismissed its administrative action against the State, UNC, and the State Department of Administration, and then filed a civil lawsuit in the Superior Court of Wake County against those same parties.

Fourth Circuit affirmed the court's decision, Defendant filed a counterclaim for damages suffered from Plaintiff's alleged failure to perform its duties as a prime contractor.

In March and May 1995, the Office of State Construction held hearings on Plaintiff's claims against UNC and the State. Years passed without the Office of State Construction issuing a decision or holding further hearings. During this period, Plaintiff went out of business allegedly due to the losses from the UNC project. At the same time, discovery in this case languished. Plaintiff unilaterally attempted to stay discovery, and both sides quickly descended into a fit of discovery motions and requests for sanctions. This lack of progress continued until the summer of 1997 when Plaintiff filed a writ of mandamus as to the State Office of Construction, seeking a decision on the claims that were then nearly four years old. Within days of being served with the notice of the filing of the writ of mandamus, after two years of consideration, the State Office of Construction denied all but one of Plaintiff's claims and awarded $104,000 to Plaintiff.

In December 1997, this court entered an order directing that all discovery be completed by December 31, 1997. On March 4, 1998, the court held a hearing and denied in part and granted in part Plaintiff's Motion for Leave to Conduct Additional Limited Discovery. The court's order restricts Plaintiff from supplementing the testimony of its expert witnesses beyond their respective testimony as presented as of the discovery cutoff of December 31, 1997, and grants Plaintiff leave to depose Defendant's rebuttal expert witnesses.

## II. Summary Judgment

The court's inquiry focuses on the facts which form the elements of Plaintiff's claims. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Barwick v. Celotex Corp.,* 736 F.2d 946, 958 (4th Cir.1984). The bur-

den may be met by the use of "affidavits, exhibits, depositions and other discovery materials." *Barwick,* 736 F.2d at 958. Where the moving party does not bear the burden of proof at trial, the burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2554. Once a moving party has met its burden, the opposing party must go forward and produce sufficient evidence to support its contentions. *Sibley v. Lutheran Hosp. of Md., Inc.,* 871 F.2d 479, 483 (4th Cir.1989) (Murnaghan, Circuit Judge, concurring). Uncontroverted evidence is taken as true. *Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1048 (5th Cir.1996). "A mere scintilla of evidence is not enough to support a fact issue; there must be evidence on which a jury might rely." *Barwick,* 736 F.2d at 958–59 (citation omitted).

Not every dispute about the material facts is genuine. Colorable evidence or evidence not significantly probative does not create a genuine issue of fact. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice. A trial, after all, is not an entitlement. It exists to resolve what reasonable minds would recognize as real factual disputes." *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985). "The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Sibley,* 871 F.2d at 483 (Murnaghan, Circuit Judge, concurring) (quoting Fed.R.Civ.P. 56 Advisory Comm. notes). The court is obligated to prevent factually unsupported claims and defenses from going to trial. *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2553.

## III. Defendant's Motion for Summary Judgment

### A. Tortious Contractual Interference

 There are five essential elements for an action for interference with contract:

(1) a valid contract existed between plaintiff and a third person, (2) defendant knew of such contract, (3) defendant intentionally induced the third person not to perform his or her contract with plaintiff, (4) defendant had no justification for his or her actions, and (5) plaintiff suffered damage as a result. *Wagoner v. Elkin City Schools' Bd. of Educ.*, 113 N.C.App. 579, 440 S.E.2d 119 (1994). In cases where the defendant is a non-outsider to the contract at issue, the plaintiff must show that the defendant's actions were malicious and lacked legal justification. *Varner v. Bryan*, 113 N.C.App. 697, 440 S.E.2d 295 (1994). A non-outsider is a party who, though not a party to the breached contract, nonetheless has a legitimate interest in the subject matter of the contract. *Smith v. Ford Motor Co.*, 289 N.C. 71, 221 S.E.2d 282 (1976). Where the defendant has an interest in the subject matter of the contract, he enjoys a qualified immunity for actions taken in furtherance of that interest. *Id.*

To defeat a non-outsider's qualified immunity, Plaintiff must produce evidence showing that Defendant acted with legal malice, *Varner*, 113 N.C.App. at 702, 440 S.E.2d at 298, meaning that Defendant exceeded his legal right or authority, and acted without legal justification. *Id.* "[I]f the actions of [Defendant] have a basis related to their legitimate business interest in the contract between plaintiff and [UNC], even though there may have also been some reasons for [Defendant's] actions unrelated to [its] legitimate business interest, plaintiff's action for malicious interference with contract cannot be sustained." *Wagoner*, 113 N.C.App. at 587, 440 S.E.2d at 124. There must also be evidence of bad motive on the part of defendant. *See Pleasant Valley Promenade v. Lechmere, Inc.*, 120 N.C.App. 650, 657, 464 S.E.2d 47, 54 (1995).

Plaintiff concedes that Defendant is a non-outsider to Plaintiff's contract with UNC. (Pl.'s Am. Mem. in Opp'n at 5.) The Complaint[2] and the general conditions of Plaintiff's construction contract with the

State demonstrate that Defendant had a legitimate interest in the subject matter of the contract between Plaintiff and the State. The court does not find, and Plaintiff has not directed the court to, evidence showing that Defendant's actions had no relationship to this legitimate interest or that Defendant acted with an improper motive. In the absence of such proof, summary judgment for Defendant is proper. *See Privette v. University of North Carolina at Chapel Hill*, 96 N.C.App. 124, 385 S.E.2d 185 (1989) (allegation of interference with employment contract dismissed where complaint admits legal motive for defendant's action). The court will enter an order dismissing Plaintiff's claim for tortious interference with contract.

### B. Breach of Contract as a Third Party Beneficiary

Plaintiff's Second Claim for Relief is for breach of contract, alleging that Plaintiff is a third party beneficiary of the design contract between the State and Defendant. Even though a plaintiff may have suffered an injury as a result of breach of contract, if he lacks the necessary privity, he lacks standing to bring an action for breach of contract. This principle bars actions in contract between contractors and low-tier subcontractors working together on a construction project. *See Metric Constructors, Inc. v. Hawker Siddeley Power Eng'g, Inc.*, 121 N.C.App. 530, 468 S.E.2d 435 (1996). The only exception in contract to the privity barrier is for actions brought by third party beneficiaries to a contract. *Meyer v. McCarley*, 288 N.C. 62, 70, 215 S.E.2d 583, 588 (1975). A mere incidental benefit arising from a contract will not confer standing to sue as a third party. *Id.*

The test for determining if a third party to the contract has standing as a third party beneficiary is whether the contracting parties intended to directly benefit the third party or whether any such benefit was merely incidental. *Chemical Realty Corp. v. Home Federal Savings & Loan*, 84

---

**2.** Paragraph 10 of the Complaint states, "As Project Architect, OBA designed the Project, prepared separate specifications and otherwise defined the scope of work for RPR and each of the other separate prime contractors, and administered the construction work and progress of RPR and each separate prime contractor and the Project as a whole."

N.C.App. 27, 351 S.E.2d 786 (1987). The court construes the contract as a whole, determining whether it was the parties' purpose to confer a benefit on the third party. *Id.* In making its determination, the court must construe the contract strictly against the third party seeking to enforce the contract. *Id.*

Plaintiff relies upon *Davidson and Jones, Inc. v. New Hanover,* 41 N.C.App. 661, 255 S.E.2d 580 (1979) and *Shoffner Indus. v. W.B. Lloyd Construction Co.,* 42 N.C.App. 259, 257 S.E.2d 50 (1979) for the proposition that it may maintain an action due to Defendant's negligent contractual performance. Plaintiff is correct and its precedent persuasive, although not for Plaintiff's Second Claim for Relief. The holdings in *Davidson* and *Shoffner* both stand for the proposition that where a contracting party negligently performs its duties under a contract thereby creating and causing foreseeable economic harm to a third party, lack of privity is no defense to an action in negligence brought by the third party. The holdings recognize an action in tort where there is not contractual privity.

▮ Defendant's contract with the State does not indicate that Plaintiff was an intended beneficiary. A review of the terms in that contract reveals that the benefits under the contract enure to the State. (App. To OBA's Motions and Memoranda, Tab 3.) Plaintiff does not direct the court to, nor does the court find, a provision suggesting that either Defendant or the State intended for Plaintiff to benefit from the rights and obligations arising under the contract. Any benefit Plaintiff received under Defendant's contract with the State was incidental. The court finds, however, that although Plaintiff lacks privity under Defendant's contract with the State, Plaintiff's cause of action under the contract is statutory.

### C. Statutory Cause of Action [3]

▮ The North Carolina General Statutes provide:

Each separate contractor shall be directly liable to ... the other separate contractors for the full performance of all duties and obligations due respectively under the terms of the separate contracts and in accordance with the plans and specifications, which shall specifically set forth the duties and obligations of each separate contractor.

N.C. Gen.Stat. § 143–128(b). *See Bolton Corp. v. T.A. Loving Co.,* 94 N.C.App. 392, 380 S.E.2d 796 (1989) (recognizing statutory cause of action). Section 143–128(b) defines "separate contractor" as: "any person, firm or corporation who shall enter into a contract with the State ... for the erection, construction, alteration or repair of any building or buildings, or parts thereof." In interpreting § 143–128 in a dispute between prime contractors, the Court of Appeals of North Carolina held

that a prime contractor may be sued by another prime contractor working on a construction project for economic loss foreseeably resulting from the first prime contractor's failure to fully perform "all duties and obligations due respectively under the terms of the separate contracts."

*Bolton,* 94 N.C.App. at 397, 380 S.E.2d at 800.

Defendant argues § 143–128(b) is applicable only to the primary contractors named within § 143–128(a), i.e., heating and ventilation, plumbing, electrical, and general construction. Defendant argues that the legislative scheme evidences an intent to exclude architects and engineers from § 143–128(b)'s definition of a "separate contractor." Despite Defendant's cogent arguments, the plain meaning of the words used by the North Carolina General Assembly binds this court. *See Robinson v. Shell Oil Co.,* 519 U.S. 337, ——, 117 S.Ct. 843, 846, 136 L.Ed.2d 808 (1997) (The court's "inquiry must cease if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.' ").

---

**3.** The court has requested and received supplemental briefs on whether Plaintiff has a statutory cause of action for Defendant's alleged breach of contract. Specifically, the court inquired wheth-

er Defendant, as project designer, was a "separate contractor," as defined in N.C. Gen.Stat. § 143–128(b).

█ The statute's language plainly states that the cause of action exists for *any* contractor that enters into a contract with the State *for the construction or erection of a building.* The best evidence of the legislature's intent is the words it used. Had the legislature meant only the primary contractors listed within § 143–128(a), it likely would have indicated such in its definition. "Where [the legislature] includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that [the legislature] acts intentionally in the disparate inclusion or exclusion." *Brown v. Gardner*, 513 U.S. 115, 120, 115 S.Ct. 552, 556, 130 L.Ed.2d 462 (1994) (citation omitted). The presumption is strengthened where, as here, the disparate language is used within the same section. The definition of separate contractor in subsection (b) is unambiguous, broad and inclusive, as contrasted with the specific language used in subsection (a). Further, such a cause of action is not inconsistent with, nor does it frustrate, the statutory scheme for selecting designers or contractors.

After a review of Defendant's contract with the State, it is clear that Defendant is an indispensable contractor in the erection and construction of the project. Defendant is the designer and supervising administrator of the construction project, without whom no construction could proceed. The construction project literally begins and ends with Defendant. Accordingly, Defendant is a firm that contracted with the State for the construction of a building. Plaintiff's cause of action under Defendant's contract with the State is statutory.[4]

D. Issue Preclusion

█ Defendant argues for a "global summary judgment" on the grounds that the claims before this court have already been litigated and adjudged by the State Office of Construction. Issue preclusion estoppes a party from re-litigating an issue that it had litigated on the merits in a prior suit and lost. *See* Restatement (Second) of Judg-

ments § 27 (1982). Issue preclusion applies when an earlier judicial proceeding resulted in a final judgment on the merits, the issue in question is identical to an issue actually litigated and necessary to the earlier judgment, and the party against whom it is being used had a meaningful opportunity to litigate the issue. *See id.* Where Plaintiff has received an adverse judgment on the merits against the principle, it may be estopped from re-litigating the identical issues against the principle's agents. *See Parklane Hosiery v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) (mutuality of parties not required for defensive issue preclusion); *accord Thomas M. McInnis & Assoc., Inc. v. Hall*, 318 N.C. 421, 349 S.E.2d 552 (1986). In a diversity action in federal court, the preclusive effects of a state administrative proceeding are measured by state law. *Rekhi v. Wildwood Indus., Inc.*, 61 F.3d 1313 (7th Cir.1995).

█ The doctrine of collateral estoppel applies to final judgments from North Carolina administrative agencies. *See, e.g., King v. North Carolina Dep't of Transp.*, 121 N.C.App. 706, 468 S.E.2d 486 (1996) (applying collateral estoppel to prevent re-litigation of issues previously decided by an administrative law judge and appealed and affirmed by superior court). The court is uncertain as to the finality of the Office of State Construction's decision. Plaintiff asserts, without citation, that North Carolina law provides de novo review of the Office of Construction's decision. Defendant concedes that Plaintiff would not be precluded until the current action before the state court is concluded. Further, Plaintiff could not have named Defendant in the claim before the state agency. In these circumstances, issue preclusion does not encourage joinder or avoid multiple lawsuits.

█ For Plaintiff to be precluded from arguing the matters before the court, Defendant would have to show these matters were already litigated and relied upon by the state agency in making its determination. The court finds that Plaintiff's actions before the

---

4. Defendant is not prejudiced by the court's recognition of Plaintiff's cause of action. The statutory cause of action relies upon the identical allegations of breach comprising Plaintiff's Second Claim for Relief.

state agency do not preclude Plaintiff from raising the same issues against Defendant in this court. The agency decision was based upon an informal hearing where, by the agency's admission, many of Plaintiff's claims were not clarified. When the state agency made its decision, it could not "find" Plaintiff's amended claims. Further, the claims were not timely decided, and a decision was not made until two days after Plaintiff petitioned for a writ of mandamus compelling a decision. The agency limited its analysis of each claim to a few bullet statements. Even within these limited bullet statements, the agency indicates other contractors may be liable for Plaintiff's alleged damages, strongly suggesting that the only issue litigated was the State's liability. *See* Memorandum and Claim Summary Matrix from Speros J. Fleggas, Director, State Construction Office, to R. Phil Roof, RPR & Associates, Inc. (July 14, 1997) (App. To OBA's Motions and Memoranda, Tab 5). Finally, the Complaint before this court does not incorporate or limit itself to the claims adjudicated before the state agency. Accordingly, the court will deny Defendant's request for global summary judgment.

### E. Statute of Limitations

 A statute of limitations bars any cause of action that is not filed within its prescribed time period. It is "inflexible and unyielding" and operates "inexorably without reference to the merits of plaintiff's cause of action." *Shearin v. Lloyd,* 246 N.C. 363, 370, 98 S.E.2d 508, 514 (1957). North Carolina imposes a three year statute of limitations for actions based upon the negligence of an architect, N.C. Gen.Stat. § 1-52(5); *Quail Hollow East Condominium Assoc. v. Donald J. Scholz Co.,* 47 N.C.App. 518, 268 S.E.2d 12 (1980), including claims based upon negligent misrepresentations. *See Barger v. McCoy Hillard & Parks,* 346 N.C. 650, 488 S.E.2d 215 (1997).

 The statute of limitations begins to run when the plaintiff's right to maintain an action accrues. *Thurston Motor Lines, Inc. v. General Motors Corp.,* 258 N.C. 323, 128 S.E.2d 413 (1962). Ordinarily, the cause of action accrues when the wrong is com-

plete. *Bolick v. American Barmag Corp.,* 54 N.C.App. 589, 284 S.E.2d 188 (1981), *modified on other grounds,* 306 N.C. 364, 293 S.E.2d 415 (1982). Under limited circumstances, a negligence or contract action accrues when the plaintiff discovers or should have discovered the wrong. *Miller v. Randolph,* 124 N.C.App. 779, 478 S.E.2d 668 (1996). N.C. Gen.Stat. § 1-50(a)(5)(f) provides for such a postponement of the accrual date in actions against architects. Specifically, the statute provides that the limitations period prescribed in § 1-52 accrues when the injury, loss, defect or damage to the plaintiff "becomes apparent or ought reasonably to have become apparent to the claimant."

 Defendant argues that the statute of limitations for Plaintiff's claims accrued when Plaintiff approached Defendant with a construction problem or filed a petition for a change order. Defendant asserts that when Plaintiff realized a difference with Defendant, accrual began. Defendant relies upon *Trustees of Rowan Technical College v. J. Hyatt Hammond Assocs., Inc.,* 313 N.C. 230, 234 n. 3, 328 S.E.2d 274, 277 n. 3 (1985) for the proposition that as "against an architect, the accrual of a cause of action does not await completion, or substantial completion, of the project out of which the claim arises." (OBA's Am. Mem. Supp. Dispositive Mot. at 3.) The court disagrees with Defendant's reading of the case. The court in *Trustees of Rowan* held that the six year statute of repose applies to architectural malpractice claims. The note to which Defendant refers states that the statute of repose, unlike the statute of limitations, runs from the defendant's last act in the case. In this case, Defendant does not assert the statute of repose as a defense.

Defendant's reliance on *Piracci Construction Co. v. Skidmore, Owings & Merrill,* 490 F.Supp. 314 (S.D.N.Y.), *aff'd* 646 F.2d 562 (2d Cir.1980) is also misplaced. The plaintiff in *Piracci* filed an action for architectural malpractice five years after filing an administrative complaint involving the same issues. The court rejected the plaintiff's argument that the accrual period did not begin until either the end of the construction project, a "continuing treatment," or the end of the

administrative adjudication. Before this court, Plaintiff does not attempt to "continue" accrual from the date of the UNC project's completion or from the state agency's determination.

The statute of limitations accrued when Plaintiff realized, or reasonably should have realized, a legal injury. *Black v. Littlejohn*, 312 N.C. 626, 325 S.E.2d 469 (1985). The court rejects Defendant's arguments that a contractor is legally injured at the instance a disagreement with the designer occurs. To accept such an argument would be to turn a blind eye toward the realities of construction. Among many other duties, Defendant's contract with the State required Defendant to administer the performance of the construction contracts, judge substitution of products, settle disputes between contractors, prepare change orders as required, and issue certificates of payment when appropriate. The claim books submitted by Defendant are comprised of correspondence between the construction designer and supervisor (Defendant) and the builder (Plaintiff) demonstrating the difficulties of going from design to implementation. The claim books reveal, and common sense dictates, that implementing the architect's plan was an interactive and ongoing process. If builders or industrialists were required to head to the courthouse the moment the architects' or engineers' plans failed to conform with reality, we would still be looking forward to the introduction of the cotton gin and steam engine.

Viewed from another perspective, when Plaintiff found itself at odds with the architect's expectations, Plaintiff had suffered no damage. Plaintiff and Defendant were still under separate contractual duties to construct the alumni center, and Defendant was still obligated to fairly resolve claims and issue certificates of payment upon satisfactory performance. The purpose of the correspondence comprising the claim books was to find a solution that satisfied Defendant. Even if Defendant's performance to that point constituted a breach of both its contract with the State and its duty of reasonable care, lacking an injury, Plaintiff lacked a cause of action.[5] Plaintiff's alleged injuries occurred when Defendant refused to issue Plaintiff certificates of payment. Upon being refused payment, Plaintiff realized that Defendant's allegedly tortious performance of its duties caused Plaintiff economic loss, that Defendant was not going to issue payment certificates to compensate Plaintiff for such losses, and that legal action would be necessary to effectuate relief. *See Quail*, 47 N.C.App. 518, 268 S.E.2d 12 (in architectural malpractice, date of accrual is date of discovery of damage). In short, Plaintiff's action accrued when it sustained injury, not when causes were set in motion that resulted in injury. Defendant's rejections of Plaintiff's requests for payment were made within three years of the filing of this action. Accordingly, the court rejects Defendant's statute of limitations argument.

This case of alleged architectural malpractice presents novel circumstances. Unlike established North Carolina precedent, the claimant in this case is not the owner of property rendered defective by an architect's alleged malpractice. Instead, Plaintiff alleges damage from the manner in which Defendant executed its duties as the State's project designer and supervisor. Plaintiff's alleged damages derive not from damage to the State's budget or real property, rather they result from Defendant's allegedly tortious administration of the project and failure to issue payment certificates to compensate Plaintiff for the increased costs due to such alleged tortious conduct.

### F. Estoppel by Acceptance of Paid Change Order

Defendant's amended memorandum in support of this motion contains three pages discussing the status of accord and satisfaction and estoppel under North Carolina law. Following this discussion, in the "Matrix Ap-

---

5. Defendant is incorrect when it states, "RPR became aware of the legal wrong, with respect to each claim for which OBA has asserted the statute of limitations, at the time RPR advised OBA in its own words that RPR believed OBA had done something wrong." (Def.'s Reply to Am. Mem. at 6.) The legal wrong occurred when RPR became aware that OBA had done something wrong *that harmed RPR*. The harm occurred when OBA through its alleged negligence increased RPR's costs *and* refused to issue a change order or payment certificate.

plying OBA's Defenses," Defendant commits two sentences to arguing why Plaintiff's claims for additional compensation for the "Great Hall Revision" should be barred, followed by a one sentence conclusion. The court has reviewed the 74 pages comprising the Great Hall revision claims and the 38 pages comprising Change Order G5. From these 112 pages of correspondence, handwritten daily construction logs, and construction surveys, the court finds multiple questions of fact regarding whether an accord and satisfaction was made for all of Defendant's potential liability arising out of the revision. Accordingly, the court will not enter summary judgment as to this theory of recovery.

## G. Contributory Negligence

Defendant also requests summary judgment for claims Plaintiff may raise at trial stemming from architectural wood millwork performed on the project. Defendant provides evidence that Plaintiff was not to proceed with such millwork until multiple parties agreed "that required ambient conditions [could] be maintained." (OBA's Am. Mem. Supp. Dispositive Mot., Ex. 1 Claim 5.) Defendant's uncontroverted evidence shows that Plaintiff did not hold such a meeting or receive such an agreement. Defendant fails, however, to forecast evidence that Plaintiff's failure was a proximate cause of the damage Plaintiff may seek under this theory. Since Defendant's evidence fails to support an essential element of negligence, the court will not enter summary judgment on this theory of relief.

## H. Arbitral Immunity

▆▆▆ Defendant argues for judgment based upon estoppel because Plaintiff agreed in its contract with the State that Defendant would be the final judge on all technical matters. Based upon the case law upon which Defendant relies, and since Defendant's argument amounts to a claim of limited immunity due to the parties' contractual relationships with the State and Plaintiff's acquiescence thereto, the court treats the argument as one for arbitral immunity. According to the North Carolina Supreme Court, a design professional, in the absence of bad faith or gross mistake, will not be liable in damages to a contractor or owner when the professional is acting in the capacity of an arbitrator of a contract dispute between the contractor and the owner. *Welborn Plumbing and Heating Co. v. Randolph County Bd. of Educ.*, 268 N.C. 85, 150 S.E.2d 65 (1966); *City of Durham v. Reidsville Eng'g Co.*, 255 N.C. 98, 103, 120 S.E.2d 564, 567 (1961). This immunity, however, is not universal, and the engineer or contractor could be held liable for negligence in the performance of the engineer's or contractor's own duties. *City of Durham*, 255 N.C. at 103, 120 S.E.2d at 567.

▆▆▆ Plaintiff is seeking to recover from Defendant for Defendant's breach of contract and negligence. When an architect acts not as an arbitrator, but as an architect or project supervisor, arbitral immunity vanishes and the architect is susceptible to legal action. *RPR & Assoc. v. O'Brien Atkins Assoc.*, 921 F.Supp. 1457, 1462 (M.D.N.C.1995), *aff'd* 103 F.3d 120 (4th Cir.1996); *see Shoffner Indus., Inc. v. W.B. Lloyd Constr. Co.*, 42 N.C.App. 259, 269–72, 257 S.E.2d 50, 57–59 (1979) (architect not entitled to limited immunity where it has general supervisory powers, i.e., administers the contract, rejects nonconforming work, and approves specifications and designs). After review of Defendant's contract with the State, and the correspondence between the parties contained within the claim books, the court finds the evidence clearly demonstrates that Defendant, as project designer, exercised general supervisory authority over the project. Plaintiff's claims are based upon Defendant's duties as an architect and supervisor. The court will deny summary judgment on what it views as a request for arbitral immunity.

## I. Wrongful Acts of Others

Defendant argues that some of Plaintiff's potential theories of recovery are for damages caused by third parties. The court will withhold judgment upon any such theory until such time as Plaintiff pursues the matter. Prior to trial, Defendant may instead make a motion in limine seeking the exclusion of such evidence on the basis of relevancy.

### J. Delay Damages

In its original motion, Defendant requested summary judgment on Plaintiff's claims about which Plaintiff's experts were unprepared at the close of discovery. These matters deal primarily with delay damages. In its amended motion for summary judgment, Defendant does not include these arguments. The court has requested and received supplemental briefs on whether expert testimony is necessary to establish delay damages. In addition, Defendants have recently filed motions in limine seeking exclusion of expert delay damage testimony finalized after the close of discovery. In the recent motions, Defendant requests that the court sanction Plaintiff by not allowing delay damage claims. The court will defer judgment on whether, at the close of discovery, Plaintiff had forecasted evidence sufficient to sustain claims for delay damages. The court will decide this issue concurrently with the motions in limine.

### IV. Cross Motions for Summary Judgment on Defendant's Counterclaims

Defendant has filed counterclaims of negligence and breach of contract as a third party beneficiary. After reviewing the relevant contracts, for the reasons stated at Section III. B. and C., the court finds Defendant is an incidental beneficiary of Plaintiff's contract with the State, and that Defendant's breach of contract claim is pursuant to N.C. Gen.Stat. § 143–128. The court will, however, dismiss Defendant's counterclaims due to a failure of evidence.

■ In its memorandum brief and attached discovery materials, Plaintiff has met its burden of showing that an essential element of Defendant's counterclaims lacks evidentiary support, namely proximate cause. Nothing in the evidence demonstrates that Plaintiff's actions caused damage to Defendant. *See, e.g.,* Bolyard Dep. at 83–84 and 92. Allegations that Plaintiff breached a duty of care are insufficient to support an inference that Plaintiff thereby harmed Defendant. *Gordon v. Garner,* 127 N.C.App. 649, 493 S.E.2d 58 (1997) (even though the defendant may have breached a duty owed the plaintiff, claim dismissed where insuffi-cient evidence in record to support a finding of proximate cause). Accordingly, the burden of production shifts to Defendant. Defendant responds with a January 9, 1998, affidavit from its counterclaim expert, Charles Bolyard, which states Plaintiff's negligence damaged Defendant.

At a December 30, 1997, deposition, Charles Bolyard stated that he had not formed an opinion on whether Plaintiff's alleged breaches of duty harmed Defendant. In February 1998, Plaintiff requested leave to conduct additional discovery. Plaintiff requested that it be allowed to provide Defendant with the conclusions of its experts and be allowed the opportunity to depose Defendant's rebuttal experts. In March, Defendant responded in brief and at hearing, vigorously arguing for the court to enforce the December 31, 1997, discovery deadline. The court sustained Defendant's arguments. The court will not now apply a different standard when Defendant attempts to update its counterclaim expert's opinion with an affidavit containing information obtained after the close of discovery. The court has not and will not grant Defendant leave to conduct additional discovery. Accordingly, the court does not consider the January 9 Affidavit of Charles E. Bolyard, Jr. Absent competent evidence that Plaintiff's conduct harmed Defendant, the court will dismiss Defendant's tort and statutory contract counterclaims. *See Young v. Fun Services–Carolina, Inc.,* 122 N.C.App. 157, 468 S.E.2d 260 (claim dismissed where the plaintiff failed to forecast evidence of proximate cause); *White v. Hunsinger,* 88 N.C.App. 382, 363 S.E.2d 203 (1988) (failure to raise genuine issue of material fact on question of proximate cause, claim dismissed); *Burke County Public Schools Bd. of Educ. v. Juno Constr. Corp.,* 50 N.C.App. 238, 273 S.E.2d 504 (damages recoverable where occur as result of contract breach).

### V. Conclusion

The court will enter an order granting summary judgment on Plaintiff's First Claim of Relief for tortious contractual interference. The court will grant leave to allow Plaintiff to conform its second claim of relief with this

court's opinion. Judgment is reserved on Plaintiff's claims for delay damages until the court decides Defendant's motions in limine and further reviews the parties' supplemental memoranda. Regarding Defendant's counterclaims, the court will grant Plaintiff's motion for summary judgment and deny Defendant's motion.

*ORDER*

For the reasons stated in the memorandum opinion filed contemporaneously herewith, the court:

Grants, stays, and denies in part Defendant's motion for summary judgment or in the alternative to dismiss [107]. The court grants Defendant's Motion on Plaintiff's Fourth Claim for Relief based upon tortious interference with contract. The court grants Plaintiff leave to amend its Second Claim for Relief to conform with this court's opinion. Until the court resolves Defendant's motions in limine and the parties' supplemental briefs, the court stays consideration on Plaintiff's claims for delay damages. Defendant's remaining arguments for summary judgment or dismissal are denied;

Grants Plaintiff's Motion for Summary Judgment as to Defendant's Counterclaim [105].